UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ARQUERO, individually And on behalf of all others similarly Situated, | ) ) ) | Case No. 1:19 CV 01528 |
| Plaintiff, | ) ) | Judge Steven C. Seeger |
| v. | ) ) ) | Magistrate Judge |
| COOK COUNTY SHERIFF THOMAS DART and SGT. JOHN WEBB in their Official capacities, and SGT. HILL, SGT. TROIS SHAVERS, OFFICER MARONEY, OFFICER ROMAN, Individually, and COOK COUNTY, a Municipal Corporation, | ) ) ) ) ) ) ) ) | CLASS ACTION COMPLAINT JURY DEMAND |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO CERTIFY CASE AS A CLASS ACTION**

NOW COMES the Plaintiff's attorneys, Gregory E. Kulis & Associates, Ltd., and pursuant to Rule 23(B)(3) moves this court to order that this case may proceed as a class action for:

All persons who were participants in the Cook County Sheriff Department's Electronic Monitoring Program between 2010 and the time this complaint is filed, whoever at any point were reincarcerated in Cook County Jail after experiencing equipment malfunctions and/or false violation alerts and were otherwise in compliance with the Electronic Monitoring System (EMS) Rules. These individuals were arrested and removed from their residence even though the Cook County Sheriff's Department knew, or had reason to know, that the EMS was fraught with evidence of ongoing false reports and malfunctioning.

1

**Subclass 1** – All participants who were reincarcerated for three days or less after repeatedly experiencing equipment malfunctioning.

**Subclass 2** – All participants who were reincarcerated for four days or more with the incarceration dismissed after evidence of reportedly experiencing equipment malfunctioning.

## I. BACKGROUND

Plaintiff Michael Arquero ("Arquero") was defending himself on several criminal charges when he was placed on electronic monitoring while he was awaiting trial. Arquero's electronic monitoring was subject to certain restrictions and conditions. During the time he was on electronic monitoring, Arquero was contacted on numerous occasions by the Defendants and/or their agents claiming he had violated the electronic monitoring program's restrictions (*e.g.* outside the permissible geographic zone). On each such occasion, Arquero promptly corrected the EMS caller, explaining that he was within the zone—many times sitting right next to the box—and therefore, was not in violation.

On February 7, 2019, Arquero provides that he was taken into custody for allegedly violating his home monitoring restrictions. Defendants placed Arquero in County Jail, summarily revoking his home confinement. When taken into custody, Arquero was informed that he had accumulated several purported violations. Despite his contentions that these were faulty violations, Defendants, and their agents, processed Arquero into Cook County Jail.

While in holding, Arquero was placed with several other individuals who had also been reincarcerated recently. Within a short time, Arquero learned several of these individuals were also experiencing faulty electronic monitoring equipment and were informed those violations were the precipice of their reincarceration. Their stories were the eerily similar.[1]

---

[1] See Affidavit of Plaintiff Michael Arquero attached as Exhibit 1.

Arquero remained in jail for several days before he went to court.[2] When Arquero was finally brought to court, the judge ordered Arquero to be released, citing to the EMS's equipment failures as the reasoning for his immediate release.[3]

Based on Arquero's conversations with other detainees while he was in jail in February 2019, he believes that several other EMS participants were detained based on electronic monitoring malfunctions and under a similar pattern as he was.

## II.    Class Member Identification

The Cook County Sheriff's Department and its retained vendor, Attenti Group ("Attenti"), possess the records for all Electronic Monitoring System participants. Within said records, it can be determined the number of participants who were taken into custody from their homes by the Sheriff's Department for alleged program violations in February 2019.

From those individuals, it can be determined who of those were reincarcerated for "excessive violations" as Arquero was. Moreover, these records would reflect each participant's history of violations (if any), type of violation, what actions Defendants and their agents took, if any, to verify the violations, and the date the individuals were released. Last, Plaintiff's counsel could ascertain—from court records—which participants were released for equipment malfunctions. Each of these steps Plaintiff's counsel can accomplish with access to a select set of Defendants' and Attenti's records and public court records.

Arquero's Affidavit substantially supports that Defendants' practice of reincarcerating EMS participants without verifying their violations existed on the day he was detained, and that this was not a unique experience among participants. Common sense and probability dictate that

---

[2] See Exhibit 1, ¶¶8,10.
[3] See February 11, 2019 Circuit Court of Cook County Order in *People v. Michael Arquero* attached as Exhibit 2.

\\    3

Defendants' were engaging in such a practice before and after Arquero's detention. Unfortunately, the records are in the sole possession of Defendants and Attenti.

Defendants possess, or have the authority to obtain, records detailing every electronic monitoring participant's geographic movements, amount of alerts they have accumulated, the dates and times of each alert, and the action taken as a result of each alert. Although Plaintiff is not seeking to obtain every participant's information and records, Plaintiff is seeking participants who were reincarcerated at any point throughout February 2019 to present. Given the computer technology at play, these records would be easy to ascertain for Defendants.

Defendants would not be subjected to a significant burden in obtaining the names and number of participants under the EMS who were reincarcerated with their home confinement rights summarily revoked. Furthermore, this number can then be modified based on how many individuals were released from jail as a result of mechanical/technical errors.

### III. Plaintiff's Legal Claims

In his Second Amended Complaint, Plaintiff contends that the Sheriff's practice amounts to a hap-hazard system of reincarcerating detainees based on automatically generated reports from Attenti's electronic monitoring equipment. And, that the Sheriff Department's reincarcerated EMS participants despite the inherent knowledge that the reports from the equipment were unreliable and flawed.

If the detainee participant adhered to the agreed movement restrictions, the Sheriff's department cannot summarily terminate his home confinement without appropriate due process. *Liska v. Dart*, 60 F. Supp. 3d 889, 898 (N.D. Ill. 2014).

Plaintiff, through its class, wishes to challenge the ongoing policy that existed to seize and reincarcerate detainees with the knowledge that the reports coming from the EMS were not accurate and cannot be relied on.

As a result of the alleged ongoing practice, Plaintiff Arquero, and several others, were summarily reincarcerated, arguably without due process.

A. *The Purported Class is Numerous.*

To satisfy numerosity, a plaintiff must show that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(A)(1). Plaintiffs do not need to show the exact number of class members "as long as a conclusion is apparent from good-faith estimates." *Williams v. Cook Cty.*, No. 18 C 1456, 2019 U.S. Dist. LEXIS 31030, at *24-26 (N.D. Ill. Feb. 27, 2019) (citing *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009)).

"Common sense assumptions" can be made in order to support a finding of numerosity. *Grossman v. Waste Managment, Inc.,* 100 F.R.D. 781, 785 (N.D. Ill. 1984). While there is no set number that serves as a bar or requirement to establish numerosity, "a class including more than 40 is generally believed to be sufficient." *Ringswald v. Cty. of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000). This Court "may make logical inferences to determine numerosity." *Magpayo v. Advocate Health and Hospitals Corp*., 2018 WL 950093 at ¶ 10 (N.D. Ill. 2018).

As he states in his affidavit, Arquero estimates that 15 individuals with similar charges were detained with him on the day he was brought in. While joining all these individuals is possible, three times that many would making joinder extremely difficult. There is a strong

probability that several others—besides the detainees Arquero interacted with while in jail—have been reincarcerated because of faulty electronic monitoring technology.

The Cook County Electronic Monitoring Program has approximately 2,000 participants on any given day.[4] Based on daily pretrial detainee population and the number of false alerts Arquero accumulated, Plaintiff contends there would be hundreds of potential class members.

Therefore, the numerosity can be extrapolated from Arquero's affidavit, statistical probability, and common sense.

> B. *Commonality Exists Among the Purported Class.*

To satisfy the commonality requirement of Rule 23(a)(2), the "prospective class must articulate at least one common question that will actually advance all of the class member claims." *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 550 (7th Cir. 2016); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). Individualized factual variations do not destroy commonality. *Cancel v. City of Chi.*, 254 F.R.D. 501, 508 (N.D. Ill. 2008)(holding that because class members shared at least one common question—whether they were afforded due process—commonality was satisfied).

Here, the commonality is simple—each participant who was reincarcerated for electronic monitoring violations due to technical malfunctions or errors is the overarching common trend among the purported class members. Specifically, Plaintiff presents the following common questions of fact and law that he asserts apply to the due process claims of both Arquero and the proposed class:

---

[4] See Sheriff Thomas Dart's Letter dated May 7, 2020 attached as Exhibit 3.

\ 6

1. Whether Defendants engage(d) in a practice of going to electronic monitoring participants' residences, arresting them, and bringing them to Cook County Jail based on the participants' purported violations;

2. Whether Defendants engaged in a practice of reincarcerating individuals without regularly verifying the legitimacy of the electronic monitoring alerts/violations;

3. Whether Defendants lacked policies and procedures that safeguard the due process rights of electronic monitoring participants who are awaiting trial;

4. Whether Defendants maintain a policy or practice of detaining electronic monitoring participants after they received a judicial determination requiring their release; and

5. Whether such policies or practices (or lack thereof) are unconstitutional.

C. *Plaintiff's Claims Share Typicality with Purported Class Members.*

Typicality in Rule 23(a)(3) "is closely related to the preceding question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A plaintiff's claims are typical if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokeley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Although "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.*

As outlined in the analysis of commonality, Arquero's due process claims are also the core of the purported class's claims. Much like the element of commonality, typicality is established by comparing the practice or conduct that gave rise to Arquero's claims and that which gave rise to

the class's claims. Here, this practice is two-fold: (1) Defendants practice of reincarcerating EMS participants for "excessive violations"; and (2) reincarceration without confirming the "violations" were legitimate. Both practices are central to the due process violations being alleged by Arquero and the potential class members.

    D.  *Plaintiff and his Counsel Would Adequately Represent the Purported Class.*

Plaintiff and the potential class are represented by competent counsel, Gregory E. Kulis & Associates, Ltd., who has litigated in the law enforcement/misconduct area for approximately 40 years.

Counsel has previously represented a class in the case of *Levitt, et al. v. Chicago Board of Education, et al.*, 1:99-cv-07536 (N.D. Ill. 1999). In *Levitt*, numerous students at a Chicago Public High School were indiscriminately grabbed and searched while entering Lincoln Park High School in Chicago, Illinois. *Id.* The unlawful seizure and search took place after the Chicago Public School Task Force set up a surprise date to bring in their own special equipment for the day with their own metal detection screening units. *Id.* The equipment broke down the morning of the scheduled operation, and students were indiscriminately grabbed with the knowledge of the Chicago Board of Education that the equipment which was brought in that day was malfunctioning. *Id.* The Honorable James F. Holderman certified the class, and Gregory E. Kulis & Associates, Ltd. managed the class and its members.[5]

Additionally, Arquero would adequately represent the class because he has personal knowledge of the EMS equipment, experienced frequent equipment malfunctions, and was erroneously detained for several days as a result. As a result of Defendants' misconduct, Arquero

---

[5] See Docket Entry No. 86, Case No. 99 C 7536, January 16, 2001 attached as Exhibit 4.

\\                                                           8

and numerous others were taken into custody for multiples days and suffered being reincarcerated, processed, detained in a holding cell, and taken to court.

Rule 23 of the Federal Rules of Civil Procedure empowers a federal court to "certify a class in each and every case where the Rule's criteria are met." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 130 S. Ct. 1431, at 1438. Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Id.* at 1437.

Plaintiff MICHAEL ARQUERO contends that he has met the criteria of Rule 23, and the class as proposed should be certified.

                */s/ Gregory E. Kulis*
                Gregory E. Kulis & Associates, Ltd.

**Gregory E. Kulis & Associates, Ltd.**
**30 North LaSalle Street, Suite 2140**
**Chicago, Illinois 60602**
**P: (312) 580-1830/ F: (312) 580-1839**
**gkulis@kulislawltd.com**

\\                 9