UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ARQUERO, | ) |
| | ) |
| Plaintiff, | ) Case No. 19-cv-1528 |
| | ) |
| v. | ) Hon. Steven C. Seeger |
| | ) |
| SHERIFF TOM DART, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

One winter morning, officers from the Cook County Sheriff's Department went to the home of Michael Arquero and arrested him for not being home. At that point, Arquero was a pretrial detainee, and his bond conditions included home confinement with an ankle monitor. The equipment said he wasn't home, but Arquero greeted the officers at the door. He was where he was supposed to be. He was where the equipment said he *wasn't*.

The officers placed Arquero under arrest because the equipment showed a long history of dozens of violations. Arquero, for his part, insisted that the equipment was malfunctioning. After four days at the Cook County Jail, a judge agreed that equipment failure caused the violations, and ordered his release. Two days later – and after a total of six nights at the Cook County Jail – Arquero finally went back home.

Arquero then filed this lawsuit against the arresting officers, two sergeants, the director of Cook County's electronic monitoring system, Sheriff Dart, and Cook County itself. He brought six claims under section 1983 and state law. Defendants responded by moving to dismiss the complaint in part.

For the following reasons, the motion is granted in part and denied in part.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Beginning in late 2016, Plaintiff Michael Arquero was a pretrial detainee in Cook County. *See* Fourth Am. Cplt., at ¶ 13 (Dckt. No. 106). In January 2018, a Cook County judge placed Arquero on the Electronic Monitoring System ("EMS"), which required him to wear an ankle monitor that tracked his location. *Id.* at ¶ 14. At that time, John Webb was the Director of the Electronic Monitoring Unit, which oversaw the EMS.[1] *Id.* at ¶¶ 6, 46.

As a condition of the EMS program, Arquero had to stay put at his home in Chicago. *Id.* at ¶ 15. He couldn't leave his residence without permission from the court. *Id.* at ¶ 17.

One month later, in February 2018, Arquero started having problems with the EMS. *Id.* at ¶ 18. The electronics began malfunctioning and misreporting his movement, so he told EMS personnel about the issues. *Id.* The complaint does not reveal how often he raised the issue. Arquero simply alleges that he "reported" the problems with the equipment. *Id.*

The complaint then jumps forward eight months, without revealing what happened in the meantime. In October 2018, officers from Cook County went to Arquero's home, replaced his ankle monitor, and swapped out an EMS box in his house. *Id.* at ¶ 19. Maybe that episode was the first time that Cook County tried to fix the equipment. Or maybe not. The complaint doesn't say.

---

[1] The complaint mentions Webb 15 times, but refers to him as "Sgt. Webb" only once. *See* Fourth Am. Cplt., at ¶ 46 (Dckt. No. 106). The Court assumes that Webb was not a sergeant.

The complaint then skips forward another four months. The key point is that, at some point, the equipment showed that Arquero was leaving home – dozens of times – in violation of his bond conditions. The complaint offers no details about when, exactly, the equipment showed violations. Maybe the violations were intermittent, or maybe the violations came in clusters.

On February 7, 2019, Officers Roman and Maroney went to Arquero's house to reincarcerate him for "excessive violations" of the EMS. Apparently, the equipment reported a total of 59 movement violations. *Id.* at ¶¶ 20, 23. The equipment reported that he wasn't home. *Id.* at ¶ 23.

When the police arrived, Arquero was home, sleeping. *Id.* at ¶ 21. The police went to the door of the home, and told Arquero that he wasn't home (according to the equipment, anyway). *Id.* at ¶ 22. That revelation must have been news to Arquero, who was standing right there. *Id.* at ¶¶ 21–22. The officers could see that Arquero was home, but the equipment said that he wasn't home. His presence raised a basic question: Who are you going to believe, the equipment, or your own eyes?

The police voted for the equipment. The arresting officers apparently consulted with Sergeant Shaver and Sergeant Hill, asking what to do given that Arquero was, in fact, at home. *Id.* at ¶ 23. The two Sergeants directed Officers Roman and Maroney to reincarcerate him in light of the history of dozens of violations. *Id.* So the two officers placed Arquero under arrest and hauled him to the Cook County Jail. *Id.*

Four days later, on February 11, a Cook County judge found that equipment failure had caused the "excessive violations." *Id.* at ¶ 26. The court ordered his release. *Id.* He was free to go, but he wasn't let go. At least not right away.

Two days later, on February 13, Arquero finally was released. *Id.* at ¶ 41. All told, Arquero spent six nights in jail. *Id.* at ¶ 25.

After that six-day ordeal, Arquero filed this lawsuit against Sheriff Tom Dart and Officer John Doe. *See* Cplt. (Dckt. No. 1). Arquero then amended his complaint four times, adding claims and defendants. *See* First Am. Cplt. (Dckt. No. 34); Second Am. Cplt. (Dckt. No. 63); Third Am. Cplt. (Dckt. No. 94); Fourth Am. Cplt. (Dckt. No. 106).[2]

In his fourth amended complaint, Arquero brings six claims against seven Defendants: Officer Roman, Officer Maroney, Sergeant Shavers, Sergeant Maroney, Webb (again, the director of the Electronic Monitoring Unit), Sheriff Tom Dart, and Cook County.

The first two claims are constitutional claims against the individual law enforcement officers. Count I is a Fourth Amendment claim against Officer Roman, Officer Maroney, Sergeant Shavers, and Webb. *See* Fourth Am. Cplt., at ¶¶ 12–28 (Dckt. No. 106). Arquero brings Count I against Cook County, too. *Id.* Count II is a due process claim against Officer Roman, Officer Maroney, Sergeant Shavers, and Sergeant Hill. *Id.* at ¶¶ 29–43.

The next two claims are *Monell* claims. Count III is a *Monell* claim against Cook County, Sheriff Dart, and Webb in their official capacities, alleging a policy or practice of ignoring defective EMS reports to reincarcerate individuals like Arquero. *Id.* at ¶¶ 44–61. Count IV is *Monell* claim against Cook County and Sheriff Dart in his official capacity, alleging a policy or practice of detaining individuals in custody for unreasonable amounts of time after a court-ordered release. *Id.* at ¶¶ 62–71.

Count V is bit murky. It purports to be a claim on behalf of Arquero and others similarly situated who were reincarcerated after 2010 after experiencing equipment malfunctions and/or

---

[2] This Court struck Arquero's third amended complaint from the docket because he filed it without leave. *See* 5/14/21 Order (Dckt. No. 98).

4

false violation alerts. *Id.* at ¶¶ 72–90. But Count V doesn't pin down what constitutional provision is at issue. The only exception is a passing reference to the "substantive and procedural due process rights of the Class." *Id.* at ¶ 80(h).

Count VI seeks indemnification from Cook County for the claims against Sergeants Shavers and Hill and Officers Roman and Maroney. *Id.* at ¶¶ 91–93.

Defendants moved to dismiss Counts II, III, IV, and VI. *See* Defs.' Mtn. to Dismiss (Dckt. No. 107).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendants fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

### I. Due Process (Count II)

In Count II, Arquero alleges that Officers Roman and Maroney, at the direction of Sergeants Shavers and Hill, reincarcerated him without due process in violation of the Fourteenth

5

Amendment.³  He claims that he was "subjected to an unlawful reduction in freedom" that caused him to suffer "emotional distress, fear, anxiety, pain, and monetary expenses." *See* Fourth Am. Cplt., at ¶ 43 (Dckt. No. 106).

Arquero is suing under the wrong amendment.  He was a pretrial detainee when the offices reincarcerated him.  The Seventh Circuit has explained that the Fourth Amendment – not the Fourteenth Amendment – governs any claim for wrongful pretrial detention.  *See Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) ("[A]ll § 1983 claims for wrongful pretrial detention – whether based on fabricated evidence or some other defect – sound in the Fourth Amendment."); *see also id.* at 478 ("It's now clear that a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment.") (emphasis in original); *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019).

Arquero responds with artful repackaging.  He argues that Count II is not about wrongful pretrial detention; it is about a change in his conditions of confinement.  *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, at 3 (Dckt. No. 109).  As he sees it, "Defendants unjustly and improperly subjected Arquero to a severely restricted *condition* of custody when he was detained in jail for several days, instead of remaining in custody on electronic monitoring."  *Id.* (emphasis added). And because conditions of confinement claims can arise under the Fourteenth Amendment, his claim is properly under the Fourteenth Amendment.  *Id.*

A conditions of confinement claim can sound in the Fourteenth Amendment.  The Due Process Clause prohibits conditions that amount to punishment of a pretrial detainee for the

---

³ Arquero seems to argue that his due process rights were also violated when he informed "John Doe Defendants" about his release order, but "John Does dismissed his pleas" and Arquero remained in jail for two more days.  *See* Fourth Am. Cplt., at ¶¶ 40–41 (Dckt. No. 106).  There are no John Doe defendants in this case, and the four named Defendants in Count II (Shavers, Hill, Maroney, and Roman) are, obviously, not John Doe.  So any due process claim based on Arquero's two days in jail – after he informed an unknown individual about his release order – is dismissed.

crime, because a pretrial detainee can't be punished. Trial first, punishment later (if at all). *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). So courts analyze a pretrial detainee's claim of unconstitutional conditions of confinement under the Due Process Clause. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015).

But the Seventh Circuit has rejected attempts to repackage a wrongful detention claim as a conditions of confinement claim. *See Williams v. Dart*, 967 F.3d 625, 632 (7th Cir. 2020). In *Williams*, the plaintiffs were released to home confinement subject to electronic monitoring, but they were wrongfully kept in jail. The Seventh Circuit held that the complaint was "not really about the conditions of their confinement in the Sheriff's jail, but the fact of their confinement." *Id.* The plaintiffs did not take issue with "conditions in the Sheriff's jail, nor the state's authority to imprison them pending trial as a general matter." *Id.* Instead, they challenged "the fact of their detention as unreasonable under the circumstances." *Id.*

The fact of confinement is not a *condition* of confinement. Otherwise, a conditions of confinement claim would become a backdoor route to tunnel into the courthouse and challenge the fact of confinement through the Fourteenth Amendment. The Seventh Circuit closed that door to pretrial detainees in *Lewis*. The Fourth Amendment is the way to go if a pretrial detainee wants to challenge the fact of pretrial incarceration.

So too here. Arquero is not challenging the conditions of Cook County Jail. He is challenging the fact that he went there at all. The case is about whether law enforcement should have hauled him off to jail, not about what things were like once he got there. He is challenging the fact of his confinement, not the conditions of his confinement, so he has no Fourteenth Amendment claim. *Id.*

7

Arquero's claim under the Fourteenth Amendment is dismissed.

## II.     *Monell* (Counts III & IV)

The next two counts are *Monell* claims. In Count III, Arquero brings a Fourth Amendment claim against Cook County and against Webb and Sheriff Dart in their official capacities. Arquero alleges that Defendants continue to reincarcerate pretrial detainees for movement violations, despite knowing about widespread problems with the equipment. *See* Fourth Am. Cplt., at ¶¶ 44–61 (Dckt. No. 106). Count IV is another Fourth Amendment claim against Cook County and against Sheriff Dart in his official capacity. Arquero claims that it took too long – two days – to release him from custody once the court ordered his release. *Id.* at ¶¶ 62–71.

"[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). So Arquero is, in effect, suing the Sheriff's Department and Cook County in both Counts. *See Bertha v. Hain*, 787 F. App'x 334, 339 (7th Cir. 2019) (explaining that "the County remains a proper defendant because state law requires it to pay a judgment entered against a sheriff in his official capacity"); *Wilson v. Cook County*, 2020 WL 5642945, at *3 n.3 (N.D. Ill. 2020) (noting that Cook County "must remain a party for indemnification purposes to the extent that any claims proceed against . . . Dart").

A municipality or other local government entity, like the Sheriff's Department, is not vicariously liable for the constitutional torts of its employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978). But a municipality "may be held liable for its own violations of the federal Constitution and laws." *See First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

Three scenarios can give rise to municipal liability under section 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.*; *see also Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). "In other words, to maintain a § 1983 claim against a municipality, one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Arquero brings both of his *Monell* claims under the second theory, meaning widespread practices or customs. To prevail, Arquero must show that the practices were "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *See Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016); *see also Gable*, 296 F.3d at 537.

There is no bright-line rule defining a widespread custom or practice, but "it is clear that a single incident – or even three incidents – do not suffice." *See Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014). The other incidents also need to be sufficiently similar to support an inference of a broader pattern. *See, e.g.*, *Howell v. Wexford Health Sources, Inc.*, 2021 WL 405006, at *3 (7th Cir. 2021) (explaining that "the comparator[s] need not be perfect" but the "similarities" must be sufficient to "show a widespread practice"); *Tillman v. Burge*, 813 F. Supp. 2d 946, 978 (N.D. Ill. 2011).

*Monell* claims are not subject to a heightened pleading standard. *See Est. of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Rule 8(a)(2) requires only "a short

9

and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). That said, conclusory allegations and formulaic recitations of the elements of *Monell* liability aren't enough. *See Iqbal*, 556 U.S. at 678–79; *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009); *see also Porter v. Bd. of Educ. of City of Chicago*, 2018 WL 1942671, at *8 (N.D. Ill. 2018) ("Bare assertions that such policies existed, without more, will not suffice.").

Arquero's first *Monell* theory is that the Cook County Sheriff's Department has a policy or practice of ignoring defective EMS reports and reincarcerating individuals based on false movement violations. *See* Fourth Am. Cplt., at ¶¶ 52, 56 (Dckt. No. 106). The complaint states that the Sheriff's Department was aware of other individuals, in addition to Arquero, who were reincarcerated for false movement violations under the EMS. *Id.* at ¶¶ 55–56.

Defendants argue that Arquero has alleged only legal conclusions without any factual content. *See, e.g.*, *Peterson v. City of Chicago*, 2015 WL 13882814, at *3 (N.D. Ill. 2015) (explaining that "'boilerplate' statements that repeat the elements of a *Monell* claim without any further factual content have been dismissed for failure to state a claim") (collecting cases); *Winchester v. Marketti*, 2012 WL 2076375, at *4 (N.D. Ill. 2012) ("What is fatal to the *Monell* claims is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."). Defendants call out the complaint for including "virtually no factual support" for his claim of a widespread practice. *See* Defs.' Mtn. to Dismiss, at 12 (Dckt. No. 107).

But a plaintiff does not have to come forward with facts proving a widespread practice at the pleading stage – he need only state a plausible claim for relief. *See Shields v. City of Chicago*, 2018 WL 1138553, at *4 (N.D. Ill. 2018) ("[T]he City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this

10

stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims.").

Arquero's response brief came forward with facts not found in his complaint. The complaint includes a sentence about what happened to other people, albeit at a high level of generality. The complaint asserts that, after he went to jail, "he became acquainted with several other individuals who were incarcerated without cause because of Defendants' custom, policy, and practice." *See* Fourth Am. Cplt., at ¶ 58 (Dckt. No. 106). But in his response brief, Arquero added more granularity, alleging that he knows of "at least seven individuals, besides Arquero, who Defendant Dart reincarcerated for baseless electronic monitoring violations." *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, at 8 (Dckt. No. 109).

Offering new facts in a response brief – meaning facts not found in the complaint itself – isn't ideal. It creates a moving target. And it can create unnecessary motion practice, too. It puts defendants in the position of challenging the adequacy of a complaint, only to have the rug pulled out from under them later when they learn new facts in a response brief. If a pleading would fail without "Fact X," then presumably "Fact X" should appear in the complaint itself.

But pleading standards can be loose, and they're loosened by allowing plaintiffs to defend a complaint with new facts that aren't in the complaint. There is case law supporting the notion that courts can consider facts offered in a response brief about a motion to dismiss, even though the facts don't appear in the complaint itself. *See Help At Home Inc. v. Med. Cap., LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001) ("'A plaintiff need not put all of the essential facts in the complaint;' he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint.") (citation omitted). But there's a hitch: the new facts must be "'consistent with the well-pleaded complaint.'" *See Dixon v.*

11

*County of Cook*, 819 F.3d 343, 349 (7th Cir. 2016) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010)); *see also Jones v. Hunt*, 2020 WL 814912, at *2 (N.D. Ill. 2020); *but see Alcorn v. City of Chicago*, 2018 WL 3614010, at *16 (N.D. Ill. 2018) ("Plaintiff alleges these new facts for the first time in the Response and, therefore, they are not properly before the Court at this stage."). Part of the rationale may be that a plaintiff could easily amend the complaint to add the new facts. *See* Fed. R. Civ. P. 15(a)(2).

Taking into account the facts in the response brief, Arquero has alleged enough to state a *Monell* claim about a widespread practice of reincarcerating pretrial detainees based on faulty equipment. He points to his own experience. And he contends that more than half a dozen people experienced the same thing. Based on that sample, a reasonable inference is that there might be a lot more cases of faulty equipment. Maybe that inference won't pan out, but time will tell (after discovery).

Arquero's allegations are not "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678. While Arquero will need to support his allegations in discovery, they suffice at the pleading stage to state a *Monell* claim. *See Barwicks v. Dart*, 2016 WL 3418570, at *4 (N.D. Ill. 2016) (explaining that, at the motion to dismiss stage, "[p]laintiff need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists.") (emphasis in original). The Court denies Defendants' motion to dismiss Count III.

Arquero's second *Monell* theory does not fare as well. In Count IV, he alleges that the Sheriff's Department has a policy or practice of holding individuals in custody after their court-ordered release dates. *See* Fourth Am. Cplt., at ¶ 67 (Dckt. No. 106). But, unlike his first theory, Arquero does not allege any other similar instances in addition to his own experience. Instead,

12

he cites to four lawsuits against the Sheriff's Department for a policy or practice of detaining individuals beyond their release date. *Id.* at ¶ 68. Those allegations won't do.

First, the existence of other lawsuits, without more, does not shed much light on the underlying facts. *See Iqbal*, 556 U.S. at 678 (requiring "factual content"). A lawsuit is an allegation. So pointing to other lawsuits simply establishes that other people have made accusations against Cook County. *See Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, 2021 WL 767619, at *11 (N.D. Ill. 2021) ("The existence of another lawsuit is not enough to state a claim that a defendant maintains a widespread practice.").

Second, while it is not impossible for a plaintiff to establish a widespread practice or custom based on his own experience, it is "necessarily more difficult" to do so. *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008). A plaintiff must allege that "there is a true municipal policy at issue, not a random event." *Id.* (citation omitted). "Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Carmona v. City of Chicago*, 2018 WL 306664, at *2 (N.D. Ill. 2018); *see also Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *2 (N.D. Ill. 2016) (rejecting a *Monell* claim because plaintiff's own experiences were the only allegations of misconduct); *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *4 (N.D. Ill. 2016) (same).

Arquero's reliance on his own experience is insufficient to plead his second *Monell* theory. He has not alleged facts allowing the Court to draw the reasonable inference that the municipality "maintains the problematic policy or practice in question." *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). He also fails to plead facts showing the requisite causation, meaning that the alleged policy of keeping detainees past their court-ordered release

dates was the "moving force" behind his incarceration beyond his own release date. *See Gable*, 296 F.3d at 537. That is, Arquero has not included facts showing a "direct causal link between the municipal action and the deprivation of [his] federal rights." *See Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997). The Court therefore dismisses Count IV.

### III.  Indemnification (Count VI)

Defendants' motion to dismiss Count VI – which seeks indemnification from Cook County – hinges on the Court dismissing Counts III and IV. *See* Defs.' Mtn. to Dismiss, at 12 (Dckt. No. 107) ("If Plaintiff could adequately plead a claim against the Cook County Sheriff's Office, Cook County would be a necessary party to this lawsuit because Illinois law requires the county to pay judgments entered against the Cook County Sheriff's Office."). The Court holds that Arquero states a *Monell* claim in Count III. So the Court denies Defendants' motion to dismiss Count VI.

### Conclusion

For the reasons stated above, the individual Defendants' motion to dismiss is granted in part and denied in part. The Court grants the motion to dismiss Counts II and IV. The Court denies the motion to dismiss Counts III and VI.

Date:  February 28, 2022

Steven C. Seeger
United States District Judge