**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL ARQUERO, individually and on behalf of all others similarly Situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.: 1:19-cv-01528<br>)<br>) |
| COOK COUNTY SHERIFF THOMAS DART and SGT. JOHN WEBB in their Official capacities, and SGT. HILL, SGT. TROIS SHAVERS, OFFICER MARONEY, OFFICER ROMAN, Individually, and COOK COUNTY, a Municipal Corporation, | ) Judge Steven C. Seeger<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF FRCP 56 MOTION FOR SUMMARY JUDGMENT**

Now Come Defendants, Cook County Sheriff Thomas Dart ("Dart"), Sgt. John Webb ("Webb"), Sgt. Hill ("Hill"), Sgt. Trois Shavers ("Shavers"), Officer Maroney ("Maroney"), Officer Roman ("Roman"), in their official capacities, and Cook County, a Body Politic and Corporate ("Cook County" and collectively "Defendants"), by and through their attorneys Jason E. DeVore and Troy S. Radunsky of DeVore Radunsky LLC, and for their Memorandum of Law in Support of Motion for Summary Judgment, pursuant to Local and Federal Rule of Civil Procedure 56 Motion for Summary Judgment, state as follows:

### I. STATEMENT OF FACTS

Defendants hereby incorporate herein their N.D. Ill. Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment. As part of the terms of Plaintiff's participation in EM, he consented to allow law enforcement entry to his dwelling. SOF, ¶ 13.

During his time in EM, Arquero had many violations and violations of rules. SOF, ¶¶ 16-17. Another requirement Arquero was supposed to adhere to during his time in EM was that he was required to answer phone calls upon the occurrence of violations, (Group Ex. B1),which he declined to do. EM Violation Call Notes, Ex. J to SOF. Upon the occurrence of Plaintiff's February 7, 2019 incarceration, he was promptly brought before the issuing judge the next day, and was held over four days based on probable cause. SOF, ¶ 19; *see also* Feb. 8, 2019 Hearing Transcript, Ex. D to SOF.

## II. BACKGROUND

Plaintiff agreed he would follow the rules of the Electronic Monitoring program, consented to allow entry into his dwelling, did not answer phone calls when called about violations, and had several such violations and violation of rules. Based upon the information generated from Plaintiff's Electronic Monitoring equipment, it is more probably true than not that he was AWOL. Plaintiff was brought before the issuing judge promptly and the judge held him over for several days based on probable cause.

Plaintiff's failure to generate any evidentiary support for his claims regarding his February 7, 2019, reincarceration warrants a grant of summary judgment in favor of Defendants for Counts I, III, V and VI. Defendants have filed a Statement of Facts and Motion for Summary Judgment in accordance with federal and local rules.

Count I of Plaintiff's Fourth Amended Complaint seeks a judgment against Defendants Shavers, Webb, Roman, Maroney, and Cook County, but not Hill. There are no allegations of wrongdoing in Count I against Defendants Cook County and Webb. Thus, there is no basis for recovery in Count I against Defendants Cook County and Webb and Count I should be dismissed

against Defendants Cook County and Webb. Additionally, Plaintiff has failed to cultivate evidentiary support his Fourth Amendment claims.

This Court dismissed Counts II and IV. Count IV was dismissed because Plaintiff did not allege "facts allowing the Court to draw the reasonable inference that the municipality maintains the problematic policy or practice in question." *See* this Court's 02/28/22 Memorandum Opinion and Order, Dkt. #113 at *13. Pointing to other lawsuits will not suffice. *Id.* As this Court appropriately noted when dismissing Count IV, "Arquero has not included facts showing a "direct causal link between the municipal action and the deprivation of [his] federal rights." *Id.* at *14.

Now, it is appropriate to grant summary judgment as a matter of law in favor of Defendants to each of the four remaining counts. Count VI is a derivative claim that falls once Counts I, III and V are extinguished by judgment in favor of Defendants.

Plaintiff's surviving *Monell* claims relied upon bare allegations of plaintiff's alleged interactions with other individuals returned to custody for having violated their movement restrictions. *Id.* at *10-11. Plaintiff contended that he became acquainted with "at least seven several other individuals" who were incarcerated "without cause". *See* Pl.'s Resp. to Defs.' Mtn. to Dismiss, Dkt. #109, at 8. Yet, after Defendants answered interrogatories on September 3, 2019 that identified 15 individuals returned to custody from February 5-9, 2019, for having violated their movement restrictions, Plaintiff did absolutely nothing to discover if any of these individuals had any interaction with Plaintiff. No depositions were taken and Plaintiff issued no subpoenas. Instead, Plaintiff admitted in his deposition that he did not know any names of detainees and none of the detainees discussed how many alleged malfunctions they had. *See* Pl.'s Deposition Transcript, Ex. H to SOF at 110-11.

Additionally, Plaintiff testified that he did "not know the disposition of their cases". *Id.* at 107-08. Plaintiff further testified that "I don't know if the court determined whether they had malfunctions or not and if they were reincarcerated. I don't know whether all of those 10 people had been reincarcerated for legitimate alerts even though they thought they were not." *Id.* at 112. Despite the fact that Defendants provided the names of fifteen detainees that were returned to custody for having violated their movement restrictions, Plaintiff did absolutely nothing to determine if any of these individuals matched the identity of those seven to ten people Plaintiff that Plaintiff contends that he spoke with while he was in the booking and holding area of the jail when he was returned to custody.

Notably, Plaintiff's *Monell* claim (Count III) is based "upon information and belief" and narrowly survived dismissal. No evidence has been developed to support plaintiff's conjecture and "information and belief". As discussed herein, no credible evidence supports a finding in favor of Plaintiff. Plaintiff baldly asserted in his complaint that the Cook County EMS has been transmitting false alerts of multiple participants' violations." Dkt. #106, ¶ 47. No witnesses have provided testimony to support this baseless contention. Plaintiff's own testimony reflects that he could not name a single participant who had "false alerts" regarding "participants' violations". *See* Pl.'s Deposition Transcript, Ex. H to SOF at 110-11.

Plaintiff contends, but cannot support the contention, that despite Defendants Sheriff Dart (in his official capacity), Webb, and Cook County knowing that these purported EMS malfunctions existed, they continued to reincarcerate individuals in violation of their Fourth Amendment rights. Dkt. #106, at ¶ 56.

The allegations in Count III relate to purported widespread conditional violations, but no evidence has been developed during the course of discovery to support such an allegation.

4

Similarly, Plaintiff took no actions to develop facts to support his class action claim (Count V). Ultimately, Plaintiff never sought to certify a class action. Given the factual void in support of Plaintiff's class action claim, judgment in favor of Defendants is appropriate.

Accordingly, Defendants are entitled to summary judgment as a matter of law for Counts I, III, V and VI of Plaintiff's Complaint.

### III.  LEGAL STANDARD

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the lawsuit's outcome, under the governing law, will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1998). The court must draw only *reasonable* inferences from the record in the light most favorable to the non-moving party. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987) (*citing Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1218 (7th Cir. 1985)).

It is the nonmovant's burden to come forward with evidence that would reasonably permit the finder of fact to find in his favor on a material question; otherwise, the court must enter summary judgment against him. *Waldridge v. Am. Hoechst Corp.* 24 F.3d 918, 920 (7th Cir. 1994). Importantly, "[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (*citing Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir.1996)).

### IV.  ARGUMENT

**A. Defendants Are Entitled to Summary Judgment for Plaintiff's 4th Amendment Due Process Claim (Count I)**

**(1) Plaintiff Consented to Defendants Actions**

5

Plaintiff consented in writing to allowing the Sheriff's officers into his home and understood that he may be returned to custody in jail based on alerts showing that he was violating the terms of the Electronic Monitoring Agreement ("EM Agreement"). Plaintiff specifically consented to allowing 24-hour access to his residence and to allow confirmation of his compliance with the terms of Electronic Monitoring ("EM").

The Fourth Amendment governs any claim for wrongful pretrial detention. *See Lewis v. City of Chi.*, 914 F.3d 472 (7th Cir. 2019). Fourth Amendment protections against warrantless search and seizure "appl[y] equally to seizures of persons and to seizures of property[.]" *Payton v. N.Y.*, 445 U.S. 573, 583-86 (1980). Signed consent agreements from participants in EM and parole programs constitute an exception to Fourth Amendment protections.

Warrantless arrests are permissible if an exception, such as consent, exists. *People v. Schreiner*, 2021 IL App (1st) 190191, at *10 (2021). Parolees explicitly consent to the terms of their parole agreements, which allow parole violations to serve as probable cause for arrests, *People v. Finch*, 86 Ill.App.3d 493, 495-96 (Ill. App. 2d 1980). The terms of parole agreements serve as actual explicit consent to warrantless search and seizure. *U.S. v. White*, 781 F.3d 858, 859-63 (7th Cir. 2015) (warrantless search and seizure of defendant parolee's gym bag reasonable based on their "sharply diminished privacy expectations as a parolee who was required to consent to searches of his property" where defendant consented in writing as condition of release).

Electronic monitoring can be imposed by the Prisoner Review Board as a condition of Mandatory Supervised Release, which is itself treated similarly to parole as far as the expectations of those engaged in such programs. *U.S. ex rel. Neville v. Ryker*, No. 08 C 4458, 2009 WL 230524, at *5 (N.D. Ill. Jan. 30, 2009) (persons released under any form of supervision are subject to rules

6

of conduct prescribed by the Board and any special conditions deemed appropriate by the Board in individual cases.); *see also* 20 Ill. Adm. Code 1610.80.

Here, as in *White*, the EM agreement had explicit terms that authorized law enforcement to arrest Plaintiff without a warrant. Plaintiff's EM agreement required 24-hour access to his residence and the allowance of confirmatory visits and data inquiries to ensure compliance with the terms of EM. The non-occurrence of alerts and data suggesting violations of these terms was a requirement of continued compliance with the terms, and upon the occurrence of such, law enforcement had Plaintiff's full actual explicit consent to their entry into his house and subsequent arrest for the violations.

Plaintiff's consent to the terms of the EM Agreement is a valid exception to the requirement for an arrest warrant. *See* EM Agreement Rules and Regulations, Group Ex. B1 to SOF. Fourth Amendment rights, like other constitutional rights, may be waived, and courts have acknowledged that implied and expressed consent are exceptions to Fourth Amendment protections.

Defendants Roman, Maroney, Shavers, and Hill took actions following receiving information regarding Plaintiff violating the terms of the EM Agreement. Officers executing a facially valid arrest warrant are protected in situations akin to this one involving a warrantless arrest, based on Plaintiff's consent. *See Hernandez v. Sheahan*, 455 F.3d 772, 773 (7th Cir. 2006), *cert. denied*, 552 U.S. 974 (2007). Officers taking actions in furtherance of a facially valid arrest warrant conforming with the Fourth Amendment are immune from constitutional claims. *Id.*

The *Hernandez* plaintiff was arrested and brought a 1983 claim alleging violation of his fourth amendment rights when he was arrested after police mistyped his driver's license number, found a warrant out for arrest on the result, and wrongly assumed it was the same person as who they had pulled over. *Hernandez*, 455 F.3d at 773. While in custody, police refused to listen to

7

Plaintiff's complaints of mistaken identity, resulting in an extended imprisonment until bond was posted, at which time the mistake was finally realized and charges were dismissed. *Id*. at 774. The *Hernandez* court ultimately ruled that even though the name on the warrant was different than Plaintiff's, the warrant was facially valid and the police had good reason to think the names could have been the same. *Id.* at 775. Thus, pursuant to *Baker v. McCollan*, 443 U.S. 137, 143-45 (1979), the court determined that despite the deprivation of plaintiff's liberty, the situation gave rise to no constitutional claims. The court reasoned that the arrest warrant was valid and conformed to the Fourth amendment, which made the policy constitutionally valid, giving rise to quasi-judicial immunity for the officers. *Hernandez*, 455 F.3d at 775-76.

Similarly, the court in *Hargarten v. Dart*, No. 05 C 6006, 2009 WL 103153, at *1 (N.D. Ill. Jan. 15, 2009) granted summary judgment in favor of Cook County regarding Plaintiff's arrest and excessive detention time based on Defendants' misrepresentations regarding the amount of Plaintiff's bond. Plaintiff claimed he would have posted bond promptly if not for the misrepresentation of the bond amount by Cook County, which he contended was a due process violation. *Id.* The Court determined that Plaintiff was arrested pursuant to a valid court order and noted that a mere custodian is not required to evaluate the sufficiency of court orders under the threat of civil actions." *Id.* at *11 (*citing Zurita v. City of Chi.*, No. 02 C 3771, 2003 WL 22127588, at *2 (N.D. Ill. Sept. 15, 2003)). The Court found no issue with the handling of the complaints of the misrepresented bond amount as far its existence as an unconstitutional policy, and further found that no due process violation had occurred as the officers had "no duty under the circumstances to heed" such complaints or inquiries. *Id.* at *13. Law enforcement officers have no duty to "double check" or to heed complaints or inquiries of administrative impropriety in carrying out their duties

8

of their duties, *Id.*, or other commands carrying force of law, such as those of a parole officer, *Finch*, 86 Ill.App.3d at 495-96, or the director of an electronic monitoring program.

Here, as in *Hernandez* and *Hargarten*, Defendants Roman, Maroney, Shavers, and Hill were taking actions with force of law, akin to a court order, related to alerts indicating Plaintiff's non-compliance with the EM Agreement. There is no legal support to require the Defendant officers to confirm the validity of the alerts prior to detaining Plaintiff.

Plaintiff cannot support an argument that he was entitled to probable cause hearing because one was not required in light of Plaintiff's consent. *See* EM Agreement Rules and Regulations, Group Ex. B1 to SOF. Plaintiff cannot cite any case law to support the proposition that Plaintiff, or any EM program participant, was entitled to a court finding of probable cause *before* the Sheriff can take the individual into physical custody, pursuant to the EM agreement. Yet, Plaintiff contends that it was unreasonable to detain him on February 7, 2019, under the circumstances.

Plaintiff's complaint relies largely on a finding from a judge that "excessive alerts" were caused by equipment failures. *See* Feb. 11, 2019 Order, Ex. F to SOF. Yet, the only competent technical evidence reflects that the EM equipment assigned to Plaintiff functioned correctly. *See* Paul Drews Deposition Transcript, Ex. I to SOF.

The court promptly conducted a hearing on Friday, February 8, 2019, and the judge determined that returning to court on February 11, 2019 was reasonable so that additional information could be obtained regarding alerts from Plaintiff's EM equipment. *See* Feb. 8, 2019 Hearing Transcript, Ex. D to SOF, at 6. On Friday afternoon following the February 8, 2019, hearing an officer from the Sheriff's EM unit responded to a request for information and advised that an audit confirmed violations for Plaintiff, along with a lack of violations after equipment was replaced. *See* Feb. 11, 2019 Hearing Transcript, Ex. E to SOF, at 3, 6. According to the violation

9

because there may have been a basis for reincarceration. *Id.* at 6. The court noted that there were "several equipment failures . . . due in part to the location of his apartment together with equipment issues" and wanted to make sure that any order "notes the history" to allow the Sheriff's office to use the order to ascertain the validity of violations moving forward. *Id.* at 7.

The evidence reflects that the defendant officers took actions based upon official orders and probable cause emanating from information regarding numerous violations reported from Plaintiff's EM equipment. Thus, qualified immunity should attach to these Defendants and protect them from the claims in Count I.

Moreover, even if qualified immunity did not apply, the evidence shows that Plaintiff received due process after being detained on February 7, 2019.

**(2) Plaintiff Received Due Process**

Plaintiff promptly received a hearing after being returned to custody. This is well within the forty-eight-hour framework contemplated by *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), which governs the length of time which may elapse before a probable cause hearing. *See, e.g.*, *Kyle v. Patterson*, 196 F.3d 695, 696 (7th Cir. 1999); *U.S. v. Sholola*, 124 F.3d 803, 819-21 (7th Cir. 1997). The Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) held that an officer's assessment of probable cause justifies an arrest and a brief period of detention to take the administrative steps incident to arrest.

Here, there was no extended detention of Plaintiff. Rather, once the February 11, 2019 hearing was completed, Plaintiff was held while the CCSO completed its processing. There was no delay related to ill will or document gathering additional evidence. Thus, under *Gerstein* and *Cty. of Riverside*, the length of time taken to complete administrative steps incident to arrest was reasonable.

Notably, Plaintiff's arrest was not for a "minor offense". Instead, Plaintiff's arrest was related to violation of the EM agreement, which specifically contemplates Plaintiff's arrest for violating the terms of the EM agreement. SOF, ¶¶ 17-18. The court conducted a hearing on Friday, February 8 and set another hearing for February 11. On February 8, the EM unit for the Sheriff's Office promptly audited the EM alerts following a request by Judge Reddick a few hours earlier.

The rapid response from the Sheriff's Office reflects reasonable diligence as contemplated by our courts. *Chortek v. City of Milwaukee*, 356 F.3d 740, 746-47 (7th Cir. 2004). During the continued hearing on Monday, February 11, 2019, the court considered the information provided by the EM unit on February 8 and ordered Plaintiff back to EM. SOF, ¶¶ 21-22. Plaintiff was then timely processed and released within forty-eight hours on February 13, 2019.

### B. Plaintiff Has No Support for His *Monell* Claim (Count III )

Plaintiff has developed absolutely no evidence to support his *Monell* claims. A plaintiff wishing to prove a *Monell* claim must develop evidentiary support to show that: (1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the City caused that deprivation. *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 694-95 (1978). Satisfying the second element requires a plaintiff to establish that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011) (*quoting Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009)).

Under *Monell* to state a widespread practice Plaintiff must prove "facts tending to show that City policymakers were aware of the behavior of officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior. *Latuszkin v. City*

11

*of Chi.*, 250 F.3d 502, 505 (7th Cir. 2001). A municipality cannot be liable unless a policy, "although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Plaintiff has developed no evidence to show a "widespread practice", as required for a *Monell* claim. Plaintiff's own deposition testimony supports at most a single incident – Plaintiff's. As this Court stated in addressing Defendants' Motion to Dismiss, "There is no bright-line rule defining a widespread custom or practice, but 'it is clear that a single incident – or even three incidents – do not suffice.'" *Arquero v. Dart*, 587 F.Supp.3d 721, 728 (Ill. N.D. 2022) (*citing Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014)).

"A 'practice is not widespread if it took place two, three, or four other times.' *Jackson v. City of Chi.*, No. 20 C 5630, 2021 WL 1056988, at *7 (N.D. Ill. Mar. 18, 2021) (*citing Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, No. 20 C 0292, 2021 WL 767619, at *26.). "Widespread" means more than "a few" or several. *See Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) (proof of isolated acts of misconduct will not suffice).

Plaintiff's failure to show a widespread practice supports summary judgment in favor of Defendants based upon Seventh Circuit caselaw, including *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008) (Plaintiff's affidavits regarding "four instances" insufficient to prove policy relating to other inmates than himself and survive summary judgement). *Id.* at 773-74. Further, the court in *Palmer v. Marion Cty.*, 327 F.3d 588 (7th Cir. 2003) rejected Plaintiff's *Monell* claim and determined that Plaintiff's widespread customs claim was not supported by his affidavit, which stated that he "personally observed" alleged practices absent any "specification of when and where

the correctional officers failed to intervene other than the incident in which he was involved." *Id.* at 595. Plaintiff had been at the facility for a year and only had personal knowledge of two incidents per his affidavit, failing to meet the standard for a widespread practice. *Id.* at 595-96.

As in *Grieveson* and *Palmer*, Plaintiff has asserted no more than the bare minimum of the allegations of his complaint and his own personal knowledge as evidence of the challenged practice being widespread. Such was not enough to survive summary judgment in those instances, thus here as well because Plaintiff has likewise failed to assert any evidentiary basis for the challenged practice being widespread, Defendants should be entitled to summary judgment.

### C. Plaintiff's Class Action Claim (Count V) Should be Disposed

When, as here, Plaintiff has failed to assert any actual evidence supporting the assertions in its complaint for class certification, it is appropriate to dispose of class action claims at the time of summary judgment. Where the claims for certification of a class are "lacking in merit" and a plaintiff has failed to assert any actual evidence supporting the assertions in its complaint for class certification, Courts have disposed of class action claims at the time of summary judgment. *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475-76 (7th Cir. 1997).

Plaintiff has the burden to satisfy class certification requirements. *Gilmore v. Sw. Bell Mobile Sys., LLC*, 210 F.R.D. 212, 216-17 (N.D. Ill. 2001). The four class certification requirements are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Id.* at 217 (*quoting* Fed. R. Civ. P. 23(a)). "Failure to meet any one of these requirements precludes certification of a class." *Id.* (*citing Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584 (7th Cir. 1993).

The Seventh Circuit Court in *Mira* did not rule on the Plaintiff's motion for class certification until after the grant of summary judgment on some claims for Defendant. *Mira*, 107 F.3d at 475. This ultimately did not affect the result, and the Court noted that it did not see a need to remand the case for the stated failure, because plaintiff's claims were "so lacking in merit[,]" and also noting that Plaintiff failed to meet "most, if not all, of the prerequisites for maintaining a class action" in failing to prove its assertions regarding satisfaction of the class action prerequisites with any evidence beyond the assertions of its claims, and accordingly granted summary judgment for defendants. *Id.* at 475-76. As in *Mira*, the Court in *Gilmore* likewise granted summary judgment for defendants predicated upon the finding that Plaintiff had failed to put forth any evidence beyond the base assertions of their complaint for satisfaction of the prerequisite elements for class certification. *Gilmore*, 210 F.R.D. at 217.

Here, like *Mira*, Plaintiff's failure merits extinguishing his class action claim. Indeed, Plaintiff has done even less than the Plaintiff in *Mira*, who at least moved for class certification. Of course, given that Plaintiff did not engage in any class discovery at any point during the litigation, a motion seeking class certification would assuredly fail. Thus, based upon *Mira*, it would be sensible to put to bed the baseless class action claim based upon "information and belief", but coupled with no evidence or action by Plaintiff. Accordingly, the Court should grant summary judgment in favor of each of the Defendants.

**D. Plaintiff's Indemnification Claim Should Terminate (Count VI)**

Plaintiff's indemnification relies on prevailing on any of the counts brought against defendants. Defendants are entitled to summary judgment on all counts and no claims remain against the Sheriff for which payment would be necessary. Thus, Count VI, which sounds in indemnification must terminate.

### V.     CONCLUSION

Defendants are entitled to summary judgment regarding Counts I, III, V and VI - the only remaining counts at issue. The evidence, coupled with the prevailing law, shows that Defendants' actions were taken pursuant to Plaintiff's consent. Also, Plaintiff's failure to cultivate evidence or take any other affirmative actions to prove his putative class action and *Monell* claims warrants judgment in favor of Defendants. Finally, Count VI necessarily fails because indemnity only arises if there is a claim to satisfy.

WHEREFORE, for the foregoing reasons, Cook County Sheriff Thomas Dart, Sgt. John Webb, Sgt. Hill, Sgt. Trois Shavers, Officer Maroney, Officer Roman, and Cook County, by and through their attorneys, respectfully request that this Court enter an order as follows:

(1) Defendants' Motion for Summary Judgment is granted
(2) Defendants are entitled to summary judgment regarding Count I
(3) Defendants are entitled to summary judgment regarding Count III
(4) Defendants are entitled to summary judgment regarding Count V
(5) Defendants are entitled to summary judgment regarding Count VI.

Respectfully Submitted,

**Cook County Sheriff Thomas Dart, Sgt. John Webb, Sgt. Hill, Sgt. Trois Shavers, Officer Maroney, Officer Roman, and Cook County, a Body Politic and Corporate**

By:   */s/ Jason E. DeVore*
        Jason E. DeVore, One of the Attorneys for Defendants

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com

### CERTIFICATE OF SERVICE

15

The undersigned, an attorney, hereby certifies that Defendants' Federal Rule of Civil Procedure 56 Motion for Summary Judgment was filed on October 28, 2022, with the Northern District of Illinois ECF System, serving a copy to all parties.

>*/s/ Zachary Stillman*
>Zachary Stillman