## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL ARQUERO, individually** | ) | |
| **And on behalf of all others similarly** | ) | **Case No.  1:19 CV 01528** |
| **Situated,** | ) | |
| **Plaintiff,** | ) | **Judge Steven C. Seeger** |
| | ) | |
| **v.** | ) | **JURY DEMAND** |
| | ) | |
| **COOK COUNTY SHERIFF THOMAS** | ) | |
| **DART and SGT. JOHN WEBB in their** | ) | |
| **Official capacities, and SGT. HILL,** | ) | |
| **SGT. TROIS SHAVERS, OFFICER** | ) | |
| **MARONEY, OFFICER ROMAN,** | ) | |
| **Individually, and COOK COUNTY, a** | ) | |
| **Municipal Corporation,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Plaintiff, MICHAEL ARQUERO, by and through his attorneys, Gregory E. Kulis & Associates, Ltd., and for his Response in Opposition to Defendant's Motion for Summary Judgment and pursuant to Local and Federal Rule of Civil Procedure 56, and respectfully requests oral argument, and thereby states as follows:

## INTRODUCTION & BACKGROUND

This case is about Defendants' actions of violating one of the most fundamental rights protected by the United States Constitution: the right not to be seized unlawfully without probable cause and for an extended period of time by the government without legal justification. Defendants motion for summary judgment turns on an unusual argument: that even assuming Cook County and Defendants held Arquero in jail for forty-eight hours after receiving a judicial order to release, doing so was completely reasonable and constitutional. That is wrong and is not supported by the

law. Decades of decisions from the Supreme Court, the Seventh Circuit, and years of constitutional jurisprudence make it clear that the government cannot needlessly detain criminal defendants entitled to release on bail or through a judicial order.

This action was brought before this Court pursuant to the laws of the United States Constitution, specifically, 42 U.S.C. § 1983 and § 1988, and the laws of the State of Illinois, to redress deprivations of the civil rights of the Plaintiff, Michael Arquero (hereinafter referred to as "Arquero"), accomplished by acts of the Defendants committed under color of law. Defendants move for summary judgment, which should be denied because there are materially disputed facts in the record when viewed in the light most favorable to Plaintiff. Michael Arquero consented to following the Electronic Monitoring Agreement terms, however, he did not consent to being *wrongfully* incarcerated for six days based on faulty equipment and inadequate investigation by Defendants. (Plaintiff's SOF ¶ 14). This alone is a clear dispute of a material fact. After Arquero's reincarceration on February 7, 2019, Cook County Judge Erica Reddick (hereinafter referred to as "Judge Reddick") explicitly noted that his wrongful detention was based on equipment failure, calling said detention a "*wrongful* reincarceration." Defendant's Ex. E: 7: 1-14. (emphasis added).

Beginning on September 9, 2016, Arquero, a trained Emergency Medical Technician and resident of Chicago, Illinois, had been defending against criminal charges in the Circuit Court of Cook County. See Dkt. #106, ¶ 13. In January of 2018, Arquero was placed on the Electronic Monitoring System ("EMU") by Judge Reddick. Defendant's Ex. A. Although Arquero agreed to subject himself to certain movement restrictions which would be monitored by the equipment and alert system, this condition was required of all electronic monitoring participants. The allegations against Arquero – similar to those made by Defendant's counsel in their pending Motion for Summary Judgment – were eventually resolved in Arquero's favor after he had sat in Cook County

Jail for six days due to his unlawful seizure. (Plaintiff's SOF ¶ 15, 16). Not only was Arquero incarcerated based upon repeated technical errors and equipment malfunction, but he also wasn't officially released from Cook County Jail until forty-eight hours after the order to release was issued by Judge Reddick. (Plaintiff's SOF ¶ 23). This is another clearly disputed issue of material fact. Defendant's main due process argument follows that there was no extended detention of Arquero and the delay to release was due to CCSO "processing" and to gather additional evidence. Def.'s Mot. Summ. J. #10.

On February 11, 2019, Judge Reddick ordered Arquero to be released back on electronic monitoring because equipment failure caused the "excessive violations." Defendant's Ex. F.  Not only was Judge Reddick concerned with Arquero being wrongfully incarcerated in the future based on equipment violations, but she also expressed her concern based on "the disruption to his life and that of his family members." Defendant's Ex. E. 4: 20-24. On February 8, 2019, EM Sergeant Jim Passas stated in an email to State's Attorney Kevin Nolan that this case should have been reviewed prior to the order to reincarcerate. *See* Plaintiff's Ex. G. Any extended detention or incarceration without proper legal justification is not only wrong – it is unconstitutional.

This Court should deny Defendant's Motion for Summary Judgment based on clear disputes of material fact that should be left up to a jury. Finally, as a preliminary matter, Plaintiff does not object to removing Defendant Webb from as a Defendant in Plaintiff's Fourth Amendment claim, but does object to having him as a Defendant in Arquero's *Monell* claim.

## STANDARD OF REVIEW

Summary judgment may only be granted when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  If after reviewing the record, the court finds that a genuine issue of material fact exists, summary judgment is

improper. See *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co*., 561 F.3d 709, 713 (7th Cir. 2009).

At the summary judgment stage, the nonmovant does not need to establish, show, or prove anything but must merely demonstrate that genuine issue of material fact exists. *Sabol v. Walter Payton College Preparatory High Sch*., 804 F. Supp. 2d 747 (N.D. Ill. 2011). In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Thus, any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Id*. The court should only grant summary judgment if no reasonable fact finder could return a verdict for the non-moving party. *Nelson v. Miller,* 570 F.3d 868, 875 (7th Cir. 2009).

## ARGUMENT

It is wholly inappropriate for Defendants to move for summary judgment based on key critical facts that are in dispute. Defendants claim that Plaintiff Michael Arquero did not answer his phone calls when he was called about alleged EM violations because he was likely "AWOL," however, Arquero has been fully compliant since his initiation into the program, only leaving his residence when a court enters an order permitting him to leave. Defendant's Ex. H (Arquero Dep.) 39: 4-5. It is troubling that Defendants are using a probability of a fact being true, as opposed to a fact that they know to be true. Plaintiff clearly disputes that as he was never AWOL. Arquero not only contradicts this fact in his deposition, but also through his own documented evidence cited by Defendants and through a signed affidavit. Defendant's Ex. J; Ex. H (Arquero Dep.); & Plaintiff's Ex. F. This is a clear dispute of a material.

Some of the important disputed facts in this case are: (1) whether Arquero's equipment alert violations were a result of faulty equipment; (2) whether Arquero answered his phone upon the occurrence of violations and if the violations were legit, (3) whether Arquero had a "prompt" and "reasonable" release from detention, (4) whether he should have been reincarcerated at all in the first place; (5) whether Defendant officers Roman and Maroney had probable cause to believe Arquero was in violation of the EM program, (6) whether his extended pretrial detention was reasonable in light of a judge ordering him to be released; and finally (7) whether, under *Monell*, Cook County EM employees follow a custom that ultimately violated Arquero's constitutional rights. Plaintiff Arquero contests to this court that these are all issues of triable fact that should be left to a jury to decide.

At the summary judgment stage, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Berry v. Baca*, 379 F.3d 764, 765 (9th Cir. 2004). The Fourth Amendment to the United States Constitution requires that persons arrested without a warrant must promptly be brought before a neutral magistrate for a judicial determination of probable cause. U.S. Const. Amend. 4. At the summary judgment stage, the non-movant does not need to establish, show, or prove *anything* but must merely demonstrate that genuine issue of material fact exists. *Sabol v. Walter Payton Coll. Prep. High School*, 804 F.Supp.2d 747 (N.D.Ill. 2011).(emphasis added).

## I.     It Would Be Improper to Grant Summary Judgment on Plaintiff's 4th Amendment Claim Because There are Material Facts in Dispute and Arquero's Pretrial Detention was Unlawful (Count I).

It is inappropriate for Defendants in this case to move for summary judgment based on key critical facts that are in dispute, as well as the case law supporting Plaintiff's position. The Seventh Circuit has recently held that "it's now clear that a § 1983 claim for unlawful pretrial detention

rests *exclusively* on the Fourth Amendment." *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019).(emphasis added).

Defendants argue that Plaintiff consented in writing to the Agreement Rules and Regulations of the Electronic Monitoring Program – which is true – however, Plaintiff in no such way consented to being wrongfully incarcerated due to equipment malfunctions. Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Plaintiff Arquero has provided a sworn affidavit on behalf of himself, as well as sworn statements from two other affiants who had similar experiences to him. Not only was Arquero physically present in his home on the day of his reincarceration, Arquero and his wife documented via cell-phone video and written logs all of the times that he received calls from EM stating that he was out of range and his equipment alert was sounding off. Defendant's Ex. J. Through no investigation or internal EM due diligence, Arquero was ordered to be reincarcerated by Defendants Hill and Shavers with the simple stroke of a pen.

Defendants argue that Arquero's Fourth Amended Complaint relies only on a finding from Judge Reddick that the "excessive alerts" were caused by equipment failures. Def.'s Mot. Summ. J. #2. Although Defendant's expert testified that the EM equipment functioned correctly, all of the other evidence in the record shows otherwise and Judge Reddick made a judicial finding of that fact. Defendant's Ex. F. Jim Passas from the EM unit sent an email to State's Attorney Kevin Nolan stating that Arquero's reincarceration was clearly equipment related and a review should have been done prior to the order to reincarcerate. Plaintiff's Ex. G. Further, Defendant Shavers was disciplined for his conduct in relation to Arquero's reincarceration. Plaintiff's Ex. D.

Not only did Judge Reddick state explicitly (both orally and via a judicial court order) that the violations were equipment related and Arquero's reincarceration was wrongful, this Court also noted in its opinion ruling on Defendant's Motion to Dismiss that Arquero was *physically* present in his home the day he was taken into custody. *Arquero v. Dart*, 587 F.Supp.3d 721, 725 (N.D.Ill. 2022).(emphasis added). "The officers could see that Arquero was home, but the equipment said that he wasn't home – who are you going to believe, the equipment, or your own eyes?" *Id*. at 725. The record supports a finding that there was not probable cause to Arquero's seizure, supporting this Court's recitation in its ruling on Defendant's Motion to Dismiss.

Defendant Shavers, Hill, Roman, and Maroney also failed to conduct a competent or thorough review of Arquero's EM data and violation reports – even though it was admitted when Defendant Maroney questioned the legitimacy of Arquero's violations, stating that they seemed "old" to Defendant Sergeant Hill. Plaintiff's Ex. I (Maroney Dep.) 47: 14-24. Had such a review been conducted and a competent investigation been done, Arquero would not have been unlawfully seized and taken away from his family. Plaintiff's Ex. G; Ex. D. Defendant Roman also testified under oath in his deposition that he did not review the paperwork or history in violation of Cook County policy. Plaintiff's Ex. J (Roman Dep.) 41: 9-13. Cook County has strict reincarceration procedures in place that address how an investigator or EM "member" should investigate prior to reincarceration. *See* Plaintiff's Ex. L. Defendant's Bate Stamp CCSAO Arquero 000865; § 1204.5(a)(1).

Arquero's reincarceration was wrongful because it was not grounded in probable cause. No reasonable investigating EM investigator could find probable cause existed to arrest for EM violations when the subject they seek to incarcerate and seize is physically present right where he is legally supposed to be – regardless of the orders they were given.

Further, Arquero wasn't allowed release until forty-eight hours after the February 11, 2019, Order to release was entered by Judge Reddick. Defendant's Ex. E. Finally, per the Seventh Circuit in *Lewis*, it is up to the jury to determine whether the amount of time it took to release the subject was reasonable. *Lewis v. O'Grady*, 853 F.2d 1366, 1367 (7th. Cir. 1988). This is a clear dispute of a material fact and should not be decided at the summary judgment stage.

On May 17, 2019, Defendant Sergeant Shavers ("Defendant Shavers") received a four-day suspension from the Director of EMU John Webb for authorizing the seizure of Arquero. Plaintiff's Ex. D. CCSAO Arquero 000857. John Webb concluded in his discipline memorandum that, "you stated that you were not the EM Sergeant that made the determination to arrest and re-incarcerate the subject. You stated you were merely the supervisor approving the case report and related documents. However, you were unable to provide proof or documentation to support your claim." Plaintiff's Ex. D. Defendant Shavers should have reviewed the paperwork to realize that this order that authorized the seizure of Arquero was not rooted in probable cause. Because Arquero's rights were violated due to his unlawful seizure, Defendant Shavers was punished as a result. Defendant Hill, superior in position at the EM unit to Defendant Shavers, gave the actual order and was equally responsible for the reincarceration of Arquero and was not disciplined in any form because he was a union employee. Plaintiff's Ex. B (Webb Dep.) 97: 12-16.

## II.     Arquero Did Not Receive Adequate Due Process Because his Continued Detention After a Judicial Order was Entered was Unreasonable and Violates his Constitutional Protections.

Arquero's Due Process and Fourth Amendment protections were violated when he was not immediately released upon Judge Reddick's order. The Fourth Amendment protects the right of the people to be secure in their person against unreasonable seizures. *Manuel v. City of Joliet,* 137 U.S. 911, 917 (2017). It "establishes 'the standards and procedures' governing pretrial detention

in criminal cases. *Id*. at 914, quoting *Gerstein v. Pugh*, 420 U.S. 103, 11, (1975). The standard for pretrial detention is probable cause, that is, official knowledge of "facts and circumstances sufficient to warrant a prudent [person] in believing" the detainee has committed a criminal offense. *Gerstein*, 420 U.S. at 111. The procedure for pretrial detention, for imposing any "extended restraint of liberty" before trial, is a decision by a neutral and detached magistrate rather than a law enforcement officer. *Id*. at 114.

Defendants argue that Arquero was not released until forty-eight hours after a judicial determination to release had been made so that Cook County could "complete it's processing" and "gather additional evidence." Def.'s Mot. Summ. J. #10. Defendants have not offered any evidence that there was an issue with processing or gathering additional evidence, which all happened after Judge Reddick made a judicial determination. Any extended or continued detention of an individual without proper justification is unlawful and unreasonable. No evidence has been put forth from Defendants that after a detainee is released that he should be continued to be held for an addition forty-eight hours. Arquero should have been released immediately upon Judge Reddick issuing her judicial order to get Arquero out of custody and back on EM.

In *Lewis*, an arrestee, who was mistakenly identified as an individual for whom there was an outstanding warrant, brought a § 1983 suit alleging false arrest and imprisonment. *Lewis v. O'Grady*, 853 F.2d 1366, 1367 (7th. Cir. 1988). The Seventh Circuit properly reasoned that it is for a jury to determine whether the eleven (11) hours it took the sheriff to discharge Lewis was reasonable," and *not* a judge on a motion for summary judgment *Id*. at 1370. Whether or not Arquero's extended overdetention was "reasonable" should be left up to the trier of fact in this case and not be decided during the summary judgment stage.

Additionally, "there is a substantial body of law in support of the proposition that a plaintiff who alleges overdetention, sometimes even for a short period, states a claim for constitutional violations." *Holder v. Town of Newton*, 638 F. Supp. 2d 150, 153 (D.N.H. 2009). While courts "have declined to adopt a bright-line rule for the maximum permissible delay in the overdetention context," the case law consistently holds that prisoner's "due process rights may be violated if they are not released within a reasonable time after the reasons for their detentions have ended." *Barnes v. Dist. of Columbia*, 793 F. Supp. 2d. 260, 275 (D.D.C. 2011). Other federal appellate circuits, such as the Second Circuit, have consistently held that claims involving wrongful post-arraignment restraints on liberty arise under the Fourth Amendment. "Inmates due process rights may be violated if they are not released within a reasonable time after the reasons for their detentions have ended." *Barnes*, 242 F.R.D. at 117-18. Arquero's Fourth Amendment and Due Process rights were violated when he was not released until two full days after a neutral judge ordered that he be released and not re-incarcerated again for equipment violations. Defendant's Ex. F. Here, Judge Reddick clearly made a judicial finding that Arquero should not have been incarcerated in the first place. In sum, this issue should be left up to a judge or jury.

### A. Defendants Incorrectly Apply *McLaughlin* to This Case.

Next, Defendant's motion for summary judgment incorrectly argues that *McLaughlin* is the applicable law in determining whether Arquero's extended detention post Judge Reddick's release order was both legal and reasonable. However, the Seventh Circuit recently held that *McLaughlin's* forty-eight-hour rule is inapplicable to over-detentions "to persons for whom legal authority for detention has ceased, whether by acquittal after trial, release on recognizance bond, completion of jail time in the sentence, or otherwise." *Driver v. Marion County Sheriff*, 859 F.3D 489 (7th Cir. 2017). The Ninth Circuit has also held that, "applying *McLaughlin's* stringent proof

requirement to post-release detentions of less than forty-eight hours would be difficult to reconcile with the fact that, for the plaintiffs at issue here, there has been a judicial determination that they are entitled to freedom from the criminal justice system." *Berry v. Baca*, 379 F.3d 764, 771 (9th Cir. 2004).

Although the forty-eight-hour test articulated by the Supreme Court in *Cty. of Riverside v. McLaughlin* clearly states the length of time which may elapse before a probable cause hearing – the case at bar is easily distinguishable. Not only is the case here easily distinguishable, but Defendants have also erred in applying the law. Arquero was first brought before a Cook County Judge on February 8, 2019. Defendant's Ex. D. The matter was then continued to February 11, 2019, based upon a request by Judge Reddick to obtain more accurate information on the EM violations. Once it was determined by EM Sergeant Jim Passas, State's Attorney Kevin Nolan, and Judge Reddick that the reincarceration was *clearly* erroneous and based on faulty equipment, Arquero was finally ordered to be released. Plaintiff's Ex. G; Defendant's Ex. E. However, Arquero was not released until forty-eight hours *after* the judge ordered him to be let out. Not only was Arquero wrongfully incarcerated in the first place, but he was also unlawfully and unreasonably held in Cook County jail for six total days plus an additional forty-eight hours after the order and judicial determination from Judge Reddick was entered.

In sum, the legality and reasonableness of Arquero's seizure and continued detention is a clear dispute of material fact that should be left up to a jury to determine who is ultimately responsible.

III. **Summary Judgment Should be Denied for Arquero's *Monell* Claims Because Arquero has Provided Evidence that a Policy Exists Resulting in Wrongful Reincarcerations (Counts III & IV).**

Defendant's contention that Plaintiff has developed "absolutely no evidence" to support his *Monell* claims is incorrect. In general, a plaintiff that wants to proceed on a *Monell* claim must develop evidentiary support to show that: (1) he has suffered the deprivation of a constitutional right; and (2) that an official custom or policy of the City caused that deprivation. *Monell v. N.Y. City Dept. of Social Servs*., 436. U.S. 658, 694-95 (1978). In order to satisfy the second prong, a plaintiff is required to establish that his constitutional violation was "caused by (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" Milestone v. City of Monroe, 665 F.3d 774, 780 (7th Cir. 2011).

Other Circuits have held that to establish municipal liability under § 1983, a Plaintiff must allege facts sufficient to show that Plaintiffs' over-detentions occurred "pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they have constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d. Cir. 2012.).

Arquero provided his recollection under oath on the day he was taken to Cook County Jail, where he was placed in the bullpen and there were approximately fifteen other individuals who were in custody for the same reason - violating their EM Agreement based on faulty equipment. Plaintiff's Ex. F. (Arquero Aff.); Defendant's Ex. H (Arquero Dep.) 100: 15-20. Prior to the seizure of Arquero, On February 6, 2019, Defendant John Webb sent an email to EM supervisors stating how it was unconscionable that there are people on this program with 50+ violations, and any supervisor that signs off on a case report for not returning someone to the Department of

Corrections will receive disciplinary action. Plaintiff's Ex. E. Additionally, Defendant Webb testified under oath in his deposition that Hill ordered the reincarceration, and that Defendant Shavers didn't complete the forms correctly which ultimately will lead to them "ending up in court." Plaintiff's Ex. B. 69: 3-16; 94: 13-24. Clearly, there is a common policy by investigators and sergeants in the EM unit to not thoroughly conduct a review prior to reincarcerating. Defendant Shavers also testified under oath in his deposition that he was aware that there was a policy in place for reincarcerations and that a member shall conduct an investigation if a participant has incurred a violation for which he or she may be reincarcerated. Plaintiff's Ex. A (Shavers Dep.) 50: 9-21; 51: 1-16. The Shavers deposition should also highlight to this court that both supervisors and investigators are to review the totality of circumstances surrounding any violation before determining re-incarceration is the appropriate response – a policy which Shavers did not do for Arquero. Plaintiff's Ex. A (Shavers Dep.) 53: 1-20. Finally, Defendant Hill in his deposition testified and acknowledged that there is a policy in place to determine if a participant has indeed incurred a violation prior to reincarceration. Plaintiff's Ex. C (Webb Dep.) 39: 20-24; 40: 1-10.

The above referenced testimony is evidence that there is a custom and policy in place to investigate and to conduct a review prior to re-incarcerating. Defendant's Hill, Shavers, and Webb all testified that they neglected to do so prior to the seizure of Arquero.

Defendants further argue and cite case law that a practice is not "widespread" if it took place two, three, or four other times. Defendants argue that Arquero's inability to allege more than two (2) instances of this widespread practice is fatal to his claim. However, Defendant City mistakes the law, as "there is no blanket rule that *Monell* plaintiffs must always allege multiple instances of unconstitutional conduct in order to show that a policy exists" *Hutton v. City of Chi.*, No. 20-cv-03997, 2021 U.S. Dist. LEXIS 39783m at *8 (N.D. Ill. Mar. 3, 2021). In support of this,

Evette Vine stated and swore under oath in an affidavit that in 2019 she was also on the EM Program through Cook County and was arrested and thrown in jail for alleged EM violations before eventually being let go because she was informed there was "equipment malfunctions." Plaintiff's Ex. H. (Vine Aff.). Also, Arquero provided a signed affidavit from Michael Klee, who was picked up around 3:00 a.m. on February 3, 2019, and spent a week in jail based on faulty EM violations before having to retain legal counsel to get Cook County to release him based on "equipment malfunction." Plaintiff's Ex. K. (Klee Aff.). More significantly, Arquero testified that as many as fifteen other individuals were in the Cook County Jail bullpen for the same reasons that he was. Plaintiff's Ex. F. It is clear that through all of this evidence Arquero has suffered a violation to his constitutional right to be free from unlawful seizure based on the customs and practices of the Cook County Electronic Monitoring Unit.

**IV.** **Plaintiff's Indemnification Claim Against Cook County Should Survive Summary Judgment Because the County is a Necessary Party (Count VI).**

As Defendants correctly stated in their motion, the indemnification cause of action is derivative of the outcome of this summary judgment motion. Plaintiff is confident his claims will survive summary judgment. Because of this, Cook County is required to indemnify any compensatory judgment awarded against these defendants at trial. In sum, this Court should deny Defendant's Summary Judgment request as to Count VI.

<u>CONCLUSION</u>

Plaintiff has demonstrated that genuine issues of material fact exist, such that summary judgment against Defendants is improper. Summary judgment on Arquero's Fourth Amendment Claim is improper because Arquero can show that Defendant's actions lacked probable cause and were unreasonable under the circumstances. Summary Judgment is also improper on Arquero's *Monell* and indemnification claims.

The court must consider these facts in the light most favorable to the nonmovant, Plaintiff Michael Arquero. Plaintiff alleges many facts are in dispute regarding the actions of both Plaintiff and Defendants, so this action should be left up to a jury or the trier of fact to decide.

WHEREFORE, for the foregoing reasons and highlighted disputes of material fact, Plaintiff Michael Arquero respectfully requests that this Honorable Court deny Defendant's motion for summary judgment and for any further relief the Court deems reasonable and just.

Respectfully submitted,

*/s/ Brian Orozco*
Brian Orozco

**GREGORY E. KULIS, #6180966**
Gregory E. Kulis & Associates, Ltd.
134 North LaSalle Street, Suite 444
Chicago, Illinois 60602
p. (312) 580-1830 / f. (312) 580-1839
e. service@kulislawltd.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that Plaintiff's Response to Defendants' Motion for Summary Judgment was filed on December 16, 2022, with the Northern District of Illinois ECF System, serving a copy to all parties.

*/s/ Brian Orozco*
Brian Orozco

\

16