UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL ARQUERO, individually and on behalf of all others similarly Situated,** **Plaintiff,** | ) ) ) | |
| | ) | |
| **v.** | ) ) | **Case No.: 1:19-cv-01528** |
| **COOK COUNTY SHERIFF THOMAS DART and SGT. JOHN WEBB in their Official capacities, and SGT. HILL, SGT. TROIS SHAVERS, OFFICER MARONEY, OFFICER ROMAN, Individually, and COOK COUNTY, a Municipal Corporation,** | ) ) ) ) ) ) ) ) | **Judge Steven C. Seeger** |
| **Defendants.** | ) ) ) | |

**DEFENDANTS' REPLY IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, Cook County Sheriff Thomas Dart ("Dart"), Sgt. John Webb

("Webb"), Sgt. Hill ("Hill"), Sgt. Trois Shavers ("Shavers"), Officer Maroney ("Maroney"),

Officer Roman ("Roman"), in their official capacities, and Cook County, a Body Politic and

Corporate ("Cook County" and collectively "Defendants"), by and through their attorneys Jason

E. DeVore and Troy S. Radunsky of DeVore Radunsky LLC, pursuant to Federal Rules of Civil

Procedure 12(f) and 56, as well as the applicable Local Rules and Standing Orders of the United

States District Court for the Northern District of Illinois, and for their Reply in Support of their

Motion for Summary Judgment, state as follows:

**INTRODUCTION**

Plaintiff's response fails to show any genuine dispute regarding a material fact that would

obviate Defendants' right to summary judgment. Instead, Plaintiff oddly labels the parties'

respective legal positions as "factual disputes" to save his Fourth Amendment claim. Plaintiff

relies on two purported un-notarized affidavits from 2020, and his own affidavit from 2020, that were not produced during the course of written discovery, nor identified in Plaintiff's deposition. Instead, the documents were first produced on December 16, 2022, well after discovery closed, when Plaintiff filed his response to Defendant's motion. Critically, the two 2020 "affidavits" are the only two references to any other detainees with potentially similar issues to Plaintiff. Further, these previously withheld documents contain inadmissible hearsay. These documents form the basis for Plaintiff's *Monell* claim that he has failed to prosecute in any meaningful way.

Plaintiff's failure to timely disclose over the past twenty-six months is highly suspicious, and he should be sanctioned for flagrant abuse of this Court's rules. Minimally, both the un-notarized affidavits from 2020, as well as Plaintiff's own 2020 affidavit, should be disregarded as tardy and unreliable, with Plaintiff's own affidavit also being a "Sham-Affidavit" in that it contradicts Plaintiff's prior sworn deposition testimony. This Court stated in its July 13, 2022, order that "the parties are not free to set their own schedule. (Dkt. #123). Yet, Plaintiff continues to consider this Court's orders as optional and showed this by camouflaging documents for more than two years of active discovery.

## LEGAL STANDARD

"[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (*cit Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162 (7th Cir. 1996)).

## ARGUMENT

Plaintiff has insufficient evidence to permit a trier of fact to find in his favor regarding his Fourth Amendment claims. It is the nonmovant's burden to come forward with evidence that would

reasonably permit a finding in his favor on a material question; otherwise, the court must enter summary judgment against him. *Waldridge v. Am. Hoechst Corp.* 24 F.3d 918, 920 (7th Cir. 1994).

## I.      Plaintiff Consented to a Warrantless Arrest (Count I)

Plaintiff's attempt to create factual disputes cannot hide the fact that the law, as applied to the material facts, shows that summary judgment in favor of Defendants is appropriate. Actions taken by Officers in furtherance of facially valid arrest warrants conforming with the Fourth Amendment are immune from constitutional claims. *See Hernandez v. Sheahan*, 455 F.3d 772, 773 (7th Cir. 2006), *cert. denied*, 552 U.S. 974 (2007). Defendants' acts were reasonable and lawful in light of Plaintiff's consent to the terms of the EM Agreement. (*See* Executed Participant Contract, Defs.' Grp. Ex. B2 at 2 to SOF).

Plaintiff argues that while he did consent in writing to the Agreement Rules and Regulations of the Electronic Monitoring Program, he did not consent "to being wrongfully incarcerated due to equipment malfunctions[.]" Pl's Resp. to Defs.' Mtn. Sum. Judg., Dkt. #140 at p. 6. He further asserts that no violation occurred because he was physically present at home at the time of his reincarceration, and that he and his wife documented all the times he received calls regarding him being out of range or equipment alerts sounding off. *Id.* The irony in Plaintiff's assertions is that many of the violations occurred as a result of his failure to answer to the phone upon the occurrence of those alerts, even though he was allegedly tracking incoming calls related to movement violation alerts. (*See* EM Violation Call Notes, Defs.' Ex. J to SOF). Failing to answer the phone in and of itself violates the EM agreement, providing a valid basis for reincarnation. (Defs.' Grp. Exs. B1, B2 to SOF). If Plaintiff was physically present in his home but failed to answer the phone when contacted regarding EM movement violations, then he knew that the Sheriff's Office would need to come to investigate and enforce the terms of the EM Agreement.

Plaintiff's own notes, coupled with competent opinion witness testimony, show that Plaintiff violated the terms of the EM agreement and was subject to reincarceration. (SOF ¶¶ 13, 15; Defs.' Ex. I to SOF at 39:1-16). At minimum, it was reasonable for Defendant Officers Roman, Maroney, Shavers and Hill to take their actions in relation to confirming compliance with the EM program, in accordance with Plaintiff's consent.

Plaintiff's consent to warrantless arrest operates in a manner akin to officers executing a facially valid arrest warrant. Each protects the Defendant officers. *See Hernandez v. Sheahan*, 455 F.3d 772, 773 (7th Cir. 2006), *cert. denied*, 552 U.S. 974 (2007). In his response to Defendants' Motion for Summary Judgment, Plaintiff did not dispute the application of *Hernandez*, which supports protecting officer Defendants. Notably, The *Hernandez* court found permissible a situation where the name on the arrest warrant used to incarcerate plaintiff had a name that differed from plaintiff's name, though, despite this significant issue, the warrant was facially valid, and the police had good reason to think they were arresting the right person. *Id.* at 775. Similarly, *Baker v. McCollan*, 443 U.S. 137, 143-45 (1979), presented a factually similar situation, wherein the court determined that the deprivation of Plaintiff's liberty did not give rise to constitutional claims, reasoning that the arrest warrant was valid and conformed to the Fourth amendment, which made the policy constitutionally valid, and gave rise to quasi-judicial immunity for the officers. *Id.* at 141-145.

Plaintiff does not contest the applicability of *Hargarten v. Dart*, No. 05 CV 6006, 2009 WL 103153, at *1 (N.D. Ill. Jan. 15, 2009), wherein the court granted summary judgment in favor of Cook County related to plaintiff's claims of improper arrest and excessive detention time. The *Hargarten* defendants misrepresented the amount of plaintiff's bond, which Hargarten claimed to be a violation of his due process rights because he would have posted bond promptly, if not for the

misrepresentation. *Id.* The court determined that mere custodians are not required to evaluate sufficiency of court orders under threat of civil actions, and that the plaintiff was arrested pursuant to a facially valid court order. *Id.* at *11 (*citing Zurita v. City of Chi.*, No. 02 CV 3771, 2003 WL 22127588, at *2 (N.D. Ill. Sept. 15, 2003)).

Each of the Defendant officers acted within the confines of the law when executing his duties. *See Hernandez at 773;* 772; *Hargarten at *11.* They are not required to be perfect, only reasonable. Plaintiff does not contest that pursuant *Hargarten,* law enforcement officers have no duty to be absolutely certain when carrying out of their duties in the face of a lawful warrant. *Hargarten at 11.* As in *Hernandez* and *Hargarten,* Defendants Roman, Maroney, Shavers, and Hill took actions with force of law, akin to a court order, related to alerts indicating Plaintiff's non-compliance with the EM Agreement. There is no legal support to suggest that the Defendant Officers were required to be absolutely certain of the absence of error prior to detaining Plaintiff.

Additionally, Plaintiff has failed to make any compelling argument that that he was entitled to a probable cause hearing – because one was not required in light of Plaintiff's consent. *See* EM Agreement, Defs.' Group Ex. B1 to SOF. Plaintiff has not cited any support for the proposition that the EM Agreement required a court finding of probable cause *before* the Sheriff could detain him. Pursuant to Plaintiff's consent to the terms of the EM agreement, none was required. (Defs.' Grp. Ex. B2 at 2 to SOF).

Plaintiff argues that Officer Maroney did not look thoroughly enough when Maroney testified that he looked at the paperwork. Pl's Resp. to Defs.' Mtn. Sum. Judg., Dkt. #140 at p. 7. Plaintiff's unhappiness with Maroney's job performance, however, does not contradict the fact that Maroney saw a facially valid document and acted in furtherance of his duties, which are protected. Similarly, Plaintiff attacks the actions of Roman, Shavers and Hill, but has not

articulated a good reason these officers are not immune from liability. The officer defendants relied on alert data that was valid, based upon analysis by an expert in electronic monitoring equipment.

On September 14, 2022, Paul Drews, an employee of the vendor/manufacturer of the EM equipment worn by Plaintiff, provided expert testimony that his analysis reflected that the EM equipment assigned to Plaintiff functioned correctly and without technical error. (SOF ¶¶ 33-34; Paul Drews Deposition, Defs.' Ex. I to SOF). Further, Mr. Drews testified that there were more than 59 alerts attributed to Plaintiff's movement violations. (Defs.' Ex. I to SOF at 39:1-16). Mr. Drews is the only person who performed an analysis and provided sworn testimony regarding the technical aspects of the EM equipment used by Plaintiff. The judge in Plaintiff's criminal hearings did not rely on any sworn expert testimony related to the technical aspects of the EM equipment used by Plaintiff. Drews' testimony that Plaintiff had movement violations therefore stands undisputed. However, 59 alerts were considered invalid, Plaintiff still had movement alerts that violated the terms of the EM Agreement. *See* Defs.' Grp. Exs. B1, B2 to SOF. Plaintiff also failed to answer the phone when officers called in violation of his duties under the Agreement. *Id.*

There is dispute regarding numerous material facts. Plaintiff consented to the terms of the EM Agreement. The EM record maintained by the Sheriff showed multiple violations of the EM Agreement. Defendants relied on these records. Plaintiff did not answer his telephone in violation of the EM Agreement. (Defs.' SOF ¶ 15; Defs.' Ex. J to SOF). As a matter of law, Defendants are entitled to summary judgment.

## II.     Plaintiff Received Due Process Following his Two Court Hearings

Plaintiff was given due process and timely released in a reasonable time within the lawful forty-eight-hour period. *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); s*ee, e.g., Kyle v. Patterson*, 196 F.3d 695, 696 (7th Cir. 1999); *U.S. v. Sholola*, 124 F.3d 803, 819-21 (7th Cir.

1997). There is no evidence of delay or perceived delay following Plaintiff's detentions. Nor is there evidence that Plaintiff grieved (in order to exhaust administrative remedies) any detention. Yet now, Plaintiff suggests that the forty-eight-hour rule outlined in *McLaughlin*, does not apply to him. He instead relies on *Driver v. Marion County Sheriff*, 59 F.3d 489, 491 (7th Cir. 2017), which does not apply to this factually dissimilar scenario.

The *Driver* court held that the *McLaughlin* forty-eight-hour rule was inapplicable in cases involving over detentions of "persons for whom legal authority for detention has ceased, whether by acquittal after trial, release on recognizance bond, completion of jail time in the sentence, or otherwise." Here, Plaintiff violated the EM agreement for reasons other than leaving the geographic confines of his EM monitoring. He failed to answer 15 telephone calls. (Defs.' SOF ¶ 15; Log Notes, Defs.' Ex. J to SOF). Plaintiff's refusal to answer the phone upon the occurrence of a triggering event was a violation. (*See* Participant Contract, Defs.' Grp. Ex. B2 to SOF at 2; *see also* EM Agreement and Responsibility Agreement, Defs.' Grp. Ex. B2 to SOF). Thus, despite a ruling from state court Judge Reddick regarding 59 of Plaintiff's violations, Plaintiff was subject to reincarceration for other violations. Accordingly, there are no genuine issues of material fact, and Defendants are entitled to summary judgment on Plaintiff's Due Process claim as a matter of law.

## III. Plaintiff's *Monell* Claim Fails

Plaintiff cannot support his *Monell* claim in light of the paucity of identified detainees. Cook County Jail is a busy place – "thousands of detainees" are housed there, with "hundreds entering and leaving on a daily basis." *Bridges v. Dart*, 950 F.3d 476, 480-81 (7th Cir. 2020). "In this context, three or five incidents ... [are] inadequate as a matter of law to demonstrate a widespread custom or practice." *Id.* at 481; *see also Gable v. City of Chi.*, 296 F.3d 531, 538 (7th Cir 2012). These incidences also must be similar in nature. *See, e.g., Thomas v. City of Markham*,

No. 16 CV 08107, 2017 WL 4340182, at *4 (N.D. Ill. Sept. 29, 2017) ("[A]llegations of general past misconduct or allegations of *dissimilar incidents* are not sufficient to allege a pervasive practice and a defendant's deliberate indifference to its consequences.").

Even if the Court considered the "affidavits," there is insufficient evidence to support a *Monell* claim. There is no information regarding who was detained, what happened to them, and how long they were detained. Plaintiff has provided no support for his bald contention that there was a policy. Having potentially 3 or 4 or 5 or even 10 incidents over a period of years is not enough to show a true municipal policy. *Thomas*, 2017 WL 4340182, at *4. *Yet*, even if it were enough, and Plaintiff's "affidavits" were taken as true, Plaintiff cannot show sufficient similarity to prove a widespread practice.

## IV. Plaintiff's Sham Affidavits Should be Barred and Disregarded

Plaintiff withheld "evidence" during his May 4, 2022, deposition, when he testified that he had no information regarding any known witnesses, despite that his affidavit and "affidavits" contradicting the same are dated October 2020. (Pl's Ex. H at p. 2; Pl's Ex. K at p. 2; Pl's Ex. F at p. 2). Even if these qualify as admissible, they do not provide support for his *Monell* claim. *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014).

No evidence has been asserted to support the contention that Defendants Sheriff Dart (in his official capacity), Webb, and Cook County knowingly continued to reincarcerate individuals in violation of their Fourth Amendment rights, with knowledge of purported EMS malfunctions. Plaintiff's affidavit states that his knowledge of the fifteen others "similarly subjected" was based on his "observations and conversation" with other detainees (Pl's Ex. F at ¶ 12); a shocking proclamation, given his lack of knowledge of other detainees in the bullpen displayed at his May 2022, deposition. Plaintiff asks the Court to accept an affidavit dated October 2020, asserting facts

about other individuals learned while detained, despite only asserting that there were about "ten" others later when deposed. (Defs.' Ex. H to SOF at pp. 100-01).

Plaintiff similarly offers as support, "affidavits" of Evette Vine and Michael Klee, (Pl's Ex. H; Pl's Ex. K), dated "signed" in October 2020. These "affidavits" conflict with his deposition testimony and suggest he has provided information suiting his own needs. Vine and Klee's affidavits, coupled with Plaintiff's (all from October 2020), show one thing – Plaintiff's utter disregard for this Court's orders and the rules governing discovery.

### A. Plaintiff Withheld Identities of Witnesses for Three Years and His Witness Affidavits Should Be Stricken and/or Disregarded

Over the course of three years, including Plaintiff's deposition and volumes of documents, Plaintiff was unable to specifically identify a single detainee similarly situated to himself. Now, after developing no facts to support his *Monell* claim during fact discovery, Plaintiff has resorted to relying on sham "affidavits," (Pl's Ex. H; Pl's Ex. K), dated October 2020, despite that he was unable to recall anything about any other detainee as of his May 4, 2022, Deposition. (Defs.' Ex. H to SOF at pp. 100-01). This Court stated in its July 13, 2022, order that "the parties are not free to set their own schedule." (Dkt. #123). Notably, this Court's July 13, 2022, order was entered after Plaintiff failed to disclose an expert by this Court's July 1, 2022, deadline. This Court's orders are not suggestions. On March 28, 2022, this Court ordered fact discovery closed as of June 30, 2022. Yet, despite this Court's admonishments and its March 28, 2022, order closing discovery on June 30, Plaintiff scoffed, disregarded this Court's orders, and withheld crucial information until six months later. (Dkt. #140-2 at ¶¶ 28-29). *See also* Pl's Ex. H and Pl's Ex. K.

Plaintiff's actions reflect creation of a moving target. His complaint referenced "several individuals" who were incarcerated "without cause." *See* Fourth Am. Cplt. ("FAC") at ¶ 58 (Dkt. #106). Plaintiff's Response to Defendant's Motion to Dismiss mentioned "at least seven

individuals." (Dkt. #109 at p. 8). Plaintiff's October 9, 2020, declaration attests that it was "15 individuals." (Pl's Ex. F ¶¶ 7, 12). Moreover, on May 4, 2022, Plaintiff testified under oath in his deposition that there were "ten detainees" in his situation, but he could not identify any of them, nor did he have any details. (Pl.'s Deposition Transcript, Defs.' Ex. H to SOF at p. 110).

At the pleading stage, courts allow plaintiffs to allege facts and draws reasonable inferences based upon those allegations. Yet, courts, including this one, do not condone ignorance of court deadlines in favor of their own schedule and fashioning their own evidence. Dkt. #123 ("[T]he parties are not free to set their own schedule."). Summary judgment is the "put up or shut up" stage of litigation, and mere allegations in a complaint are insufficient to survive summary judgment. Where Plaintiff's "evidence" must be disregarded, for reasons set forth below, he has nothing to fall back on.

### 1.  Rule 26 Promotes Disclosure Not Secrets

Plaintiff's failure to disclose three affidavits/declarations for more than two years, until used as support for his reply brief, violates Rule 26 and warrants barring those pieces of evidence. "Rule 26 mandates that each party provide to the other 'the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.'" *Sterling National Bank v. Block*, No. 16 C 9009, 2018 WL 11200447 at *1 (N.D. Ill. April 18, 2018) (*quoting* Fed. R. Civ. P. 26(a)(1)(A)(i)).

Parties in litigation have a continuing obligation to supplement "Rule 26(a) disclosures as soon as the party or its counsel knows or should know that the disclosures are incomplete." *Sterling National Bank*, 2018 WL 11200447 at *1 (*citing Pouncy v. City of Chi.*, No. 15 CV 1840, 2017 WL 8205488, at *15 (N.D. Ill. Dec. 11, 2017)); *see also* Fed. R. Civ. P. 26(e). Such amendments

are required in cases like this, when the additional information "has not otherwise been made known to the other parties during the discovery process." *Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir. 2004) (*quoting* Fed. R. Civ. P. 26(e)).

Here, Plaintiff and his counsel either knew or should have known that Plaintiff's disclosures were incomplete in October 2020, when the affidavits/declarations were drafted and executed. (Pl's Ex. H at p. 2; Pl's Ex. K at p. 2). Plaintiff served answers to interrogatories on October 25, 2019, and responses to requests to produce on October 30, 2019, but failed to disclose any witnesses. Plaintiff later denied knowing any individuals from the jail during his deposition. Despite having numerous opportunities to disclose witnesses, it is obvious that Plaintiff chose to suppress his knowledge of two witnesses that had evidence bearing directly on Plaintiff's *Monell* claim.

The Rule 26(e) requirement for timely disclosures to ensures that each party has adequate notice and prevents unfair surprise. *Sterling National Bank,* 2018 WL 11200447 at *1. Failure of a party to timely amend its disclosures supports "the Court must exclude the undisclosed evidence unless the party can show that its violation of Rule 26 was either justified or harmless." *Id.* at *2; *see also Westefer*, 422 F.3d at 584 n.21 (*quoting* Fed. R. Civ. P. 37(c)(1)). Alternatively, the Court may compel payment of attorney's fees or impose other sanctions. *Johnson v. McDonald*, Case No. 15-cv-11092, 2020 WL 374679 at *1 (N.D. Ill. Jan. 23, 2020); *Musser v. Gentiva Health Services*, 356 F.3d 751, 755, 759–60 (7th Cir. 2004).

The district court has broad discretion and need not make explicit findings regarding the Rule 26 violation, *Sterling National Bank*, 2018 WL 11200447 at *2, but these factors can guide their discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4)

the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* (*citing Westefer*, 422 F.3d at 584 n.21; *Bannister v. Burton*, 636 F.3d 828, 833 (7th Cir. 2011)).

Plaintiff has not and cannot show that its violation of Rule 26 was either justified or harmless. There is unquestionably prejudice to Defendants given the 26-month delay, coupled with Plaintiff's numerous opportunities to disclose the identity of witnesses. Fact discovery also closed on June 30, 2022, leaving no opportunity to depose either "affiant." Plaintiff's counsel clearly knew the impact of the secreted affidavits yet chose to lie in wait for more than two years. Now that Plaintiff needs to create questions of fact, he submitted old undisclosed evidence to save his claim. Plaintiff's abuse of the discovery process should not be rewarded. Hence, this Court must exclude the undisclosed evidence. *Sterling National Bank,* 2018 WL 11200447, at *1.

### 2. Rule 56(h) Supports Sanctions for Plaintiff's Bath Faith Affidavits

Plaintiff's bad faith violation of Rule 56(h) also warrants sanctions. Under Rule 56(h) of the Federal Rules of Civil Procedure, where it is found that an affidavit or declaration is submitted "in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Fed. R. Civ. P. 56(h). Further, "[a]n offending party or attorney may also be held in contempt or subjected to other appropriate sanctions." *Id.* Accordingly, Rule 56(h) "thus requires a judge to scrutinize the actual substance of an affidavit offered in response to a summary judgment motion to determine whether a reasonable jury could rely on the factual statements it contains. *Id.* (*citing Jiminez v. All Am. Rathskellar, Inc.*, 503 F.3d 247, 252 (3rd Cir. 2007)).

The Northern District Court in *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839, 951 (N.D. Ill. 2021), held that it is "disciplined to impose sanctions under" Rule

56(h) but expressed willingness to impose sanctions for improper conduct, like the conduct of Plaintiff in this matter.

Plaintiff's efforts to hide affidavits for the improper purpose of surprise necessitates sanctions for bad faith. Plaintiff's October 2020, affidavit directly contradicts his May 4, 2022, deposition, wherein he testified that he met "ten" detainees. (Defs.' Ex. H to SOF at pp. 100-01). His affidavit reflects that Plaintiff met "fifteen" similarly situated detainees, (Pl's Ex. F at ¶ 12). Similarly, Plaintiff's July 15, 2021, Response to the Motion to Dismiss his FAC, stated the number to be "at least seven[.]" Dkt. #109 at p. 8. The number of detainees referenced is critically important to Plaintiff's claims, particularly his *Monell* claim where Plaintiff is unable to show a widespread practice. Plaintiff cannot continually change numbers on a whim throughout 3.5 years of litigation and avoid consequences. Exclusion of his affidavit and two additional "affidavits" from October 2020 is an appropriate sanction.

### B. Plaintiff's Attempt to Contradict his Prior Sworn Deposition Testimony with his Affidavit Violates the "Sham Affidavit Doctrine"

Plaintiff has now produced his October 2020, affidavit in response to Defendant's motion. (Pl's Ex. F). The Court should disregard Plaintiff's new contradictory testimony under the "sham-affidavit" rule. *James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020).

"The sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James*, 959 F.3d at 315 (*citing Dunn v. Menard, Inc.*, 880 F.3d 889, 910 (7th Cir. 2018)); *see also Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985). It is well within a court's discretion "to strike an affidavit that contradicts deposition testimony[.]" *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 406 (7th Cir. 2022) (*citing Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 623 (7th Cir. 2002)). Such affidavits are "entitled to zero weight in summary judgment proceedings" unless a plausible explanation for

the contradiction is provided. *Id.* (*citing Beckel*, 301 F.3d at 623); *see also Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995); *Donohoe v. Consol. Operating & Prod. Corp.*, 982 F.2d 1130 (7th Cir. 1992).

Here, Plaintiff's affidavit testimony is inconsistent with his sworn deposition testimony and argument in Plaintiff's briefs responding to motions. Plaintiff's testimony and allegations have vacillated from "several" to "fifteen" to "seven" to "ten" unidentified detainees. (Dkt. #109 at p. 8; Defs.' Ex. H to SOF at p. 110; Pl's Ex. F at ¶¶ 7, 12). This improper use of affidavits necessitates a sanction of not considering Plaintiff's improper testimony.

The Vine and Klee Affidavits are not proper affidavits, nor proper declarations. Plaintiff filed numerous "affidavits" to support his response in opposition to Defendants' Motion for Summary Judgment. (Pl's Ex. H and K). These "affidavits" are not notarized and have no evidentiary value to the court for this use. (Pl's Ex. H at p. 2; Pl's Ex. K at p. 2). *Sheikh v. Grant Regional Health Ctr.*, 769 F.3d 549, 551 (7th Cir. 2014); *Davis v. Chicago Contract Cleaning & Supply Co.*, Case No 97 C 7975, 1998 WL 386376 at *3 (N.D. Ill. Jun. 29, 1998); *Est. of Davis v. Wells Fargo Bank*, 633 F.3d 529, 540 & n.5 (7th Cir. 2011); *Afridi v. BNSF Railway Co.*, Case No. 18-CV-8205, 2022 WL 16696265 at *2 (N.D. Ill. Nov. 3, 2022); *see also Price v. Fed. Bureau of Prisons*, No. 21 C 542, 2022 WL 972294, at *4 (N.D. Ill. Mar. 31, 2022); *Rivera v. Allstate Ins. Co.*, 140 F.Supp.3d 722, 729 (N.D. Ill. 2015).

The Evette Vine (Pl's Ex. H) and Mike Klee (Pl's Ex. K) "affidavits" do not adhere to this single most important requirement for an affidavit. Plaintiff's "affidavits" are unnotarized. (Pl's Ex. H at p. 2; Pl's Ex. K at p. 2). Moreover, Plaintiff's affidavits do not qualify as sworn declarations under 28 U.S.C. § 1746, as they are not sworn to under penalty of perjury and do not possess the required language under the statute. Unsworn declarations must "be supported,

evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated." *Id.* "[N]oncompliance with the local rules is ... sufficient reason for granting [movant's] motion[.]" *Davis*, 1998 WL 386376, at *3.

The Evette Vine and Mike Klee documents fail to conform and are unreliable. (Pl's Ex. H, K) They are not signed "under penalty of perjury" or verified as "true and correct", as required. They cannot be sworn under oath because nobody administered oaths to Vine or Klee. (Pl's Ex. H at p. 2; Pl's Ex. K at p. 2). They have zero evidentiary value and were hidden for more than two years. Plaintiff's abusive tactics and non-compliance with requirements should not be rewarded. Thus, neither document qualifies as sworn declaration, or affidavit, and neither can be used by Plaintiff as support.

## CONCLUSION

Defendants are entitled to summary judgment regarding all pending Counts: I, III, V and VI. Defendants' actions were taken pursuant to Plaintiff's consent, were not unreasonable and are protected. Plaintiff's failure to cultivate evidence to prove his *Monell* claim warrants judgment in favor of Defendants. Finally, Count VI fails because indemnity only arises if there is a claim to satisfy.

WHEREFORE, Cook County Sheriff Thomas Dart, Sgt. John Webb, Sgt. Hill, Sgt. Trois Shavers, Officer Maroney, Officer Roman, and Cook County, by and through their attorneys, respectfully request that this Court enter an order as follows:

(1) Plaintiff's October 2020 Affidavit is stricken/excluded;
(2) The affidavits of Evette Vine and Michael Klee are stricken/excluded;
(3) Defendants' Motion for Summary Judgment is granted;
(4) Defendants are entitled to summary judgment regarding Count I
(5) Defendants are entitled to summary judgment regarding Count III;
(6) Defendants are entitled to summary judgment regarding Count IV;

(7)   Defendants are entitled to summary judgment regarding Count V;

(8)   Defendants are entitled to summary judgment regarding Count VI;

(9)   Reasonable expenses, including attorney's fees, incurred for violating FRCP 26, 37 and 56(h);

(10) Any other relief deemed appropriate by this Court.

Respectfully Submitted,

**Defendants**

By:     */s/ Jason E. DeVore*
        Jason E. DeVore, One of the Attorneys for Defendants

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that **Defendants' Reply in Support of their Federal Rule of Civil Procedure 56 Motion for Summary Judgment** was filed on January 23, 2023, with the Northern District of Illinois ECF System, serving a copy to all parties.

*/s/ Zachary Stillman*
Zachary Stillman