UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL ARQUERO, individually and on behalf of all others similarly Situated,<br><br>                Plaintiff,<br><br>     v.<br><br>COOK COUNTY SHERIFF THOMAS DART and SGT. JOHN WEBB in their Official capacities, and SGT. HILL, SGT. TROIS SHAVERS, OFFICER MARONEY, OFFICER ROMAN, Individually, and COOK COUNTY, a Municipal Corporation,<br><br>                Defendants. | Case No.: 1:19-cv-01528<br><br>Judge Steven C. Seeger |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF CONTESTED FACTS (entitled "PLAINTIFF'S ADDITIONAL STATEMENT OF MATERIAL FACTS")**

NOW COME Defendants, Cook County Sheriff Thomas Dart ("Dart"), Sgt. John Webb ("Webb"), Sgt. Gerard Hill ("Hill"), Sgt. Trois Shavers ("Shavers"), Officer Robert Maroney ("Maroney"), Officer Ricardo Roman ("Roman"), in their official capacities, and Cook County, a Body Politic and Corporate ("Cook County" and collectively "Defendants"), by and through their attorneys, DeVore Radunsky LLC, pursuant to Local Rule 56.1(b)(3), and for their response to Plaintiff's Local Rule 56.1 Statement of Facts (incorrectly entitled "Plaintiff's Additional Statement of Material Facts"), states as follows:

1.      On February 6, 2019, Defendant Webb sent an internal email to EMU Supervisors expressing his concern on how it was unconscionable that there were people on the EMU program with excessive violations that have not been reincarcerated that were "obvious program

1

violators," and Defendant Hill understood that to mean they should do a proper investigation on the record before incarcerating. Plaintiff's Ex. E.

**RESPONSE:** Uncontested.

2.	At all relevant times, Defendant Hill was employed at the Cook County Sheriff's Department and ordered the re-incarceration of Plaintiff Michael Arquero. Plaintiff's Ex. B (Webb Dep.) 69: 14-16.

**RESPONSE:** Uncontested.

3.	The Cook County Sheriff's Office has a strict policy for reincarceration that requires members to conduct an investigation and to review the "totality of circumstances" surrounding any violation to ensure all reincarcerations are supported by probable cause. See Plaintiff's Ex. L. Defendant's Bate Stamp CCSAO Arquero 000865; § 1204.5(a)(1).

**RESPONSE:** Uncontested.

4.	Defendant Shavers, Hill, and Webb all acknowledged the existence of said policy under oath in their depositions. Plaintiff's Ex. A (Shavers Dep.); Ex. B (Webb Dep.); Ex. C (Hill Dep.).

**RESPONSE:** Uncontested.

### Michael Arquero's Wrongful Reincarceration

5.	Arquero complied with the movement restrictions placed upon him since his initiation into the electronic monitoring program, only leaving his residence when a court enters an order permitting him to leave. Defendant's Ex. H (Arquero Dep.) 39: 4-5.

**RESPONSE: Deny. See Paul Drews Dep (Def. Ex. I, 31:19-24, 32:1-7, 34:1-3, 36:3-7 39:9-11); and John Webb Dep (Plaintiff Ex. B 43:15-24, 44:1-7, 60:16-25, 61:1-5.)**

2

6. In February 2018, Arquero experienced several electronic monitoring equipment malfunctions and reported them each to the proper electronic monitoring personnel. Defendant's Ex. H (Arquero Dep.) 38: 14-18; Defendant's Ex. J.

**RESPONSE: Deny. See Paul Drews Dep (Def. Ex. I, 31:19-24, 32:1-7, 34:1-3, 36:3-7 39:9-11); and John Webb Dep (Plaintiff Ex. B 43:15-24, 44:1-7)**

7. In October 2018, officers from the Cook County Sheriff's Department had Arquero bring his equipment into a county facility to get it replaced. Defendant's Ex. H (Arquero Dep.) 67: 14-18.

**RESPONSE:** Uncontested.

8. Since the equipment was replaced, there were no documented violations since the replacement as of October 15, 2018. Plaintiff's Ex. G; Defendant's Ex. H (Arquero Dep.) 122: 5-11.

**RESPONSE:** Uncontested.

9. Hill, in violation of Cook County Policy, acknowledged that the policy requires that investigators should complete a substantive review monitoring the "totality of circumstances," starting with the history of compliance. Plaintiff's Ex. C (Hill Dep.) 42: 11-18.

**RESPONSE: Admit Hill acknowledged that the policy requires that investigators complete a review monitoring the "totality of circumstances," starting with the history of compliance. Deny Hill violated the policy. (Plaintiff Ex. C; Hill Dep 55:4-19, 69:9-14, 70:11-14)**

10. On February 7, 2019, Defendant investigators Roman and Moroney were sent to Arquero's residence to seize him for "excessive violations," at the direction of Sergeant Shavers and Sergeant Hill. Defendant's Ex. H (Arquero Dep.) 77: 15-21.

**RESPONSE:** Uncontested.

11. Defendant investigators Roman and Maroney were sent to Arquero's residence at the explicit order from Shavers and Hill to seize him for alleged "electronic monitoring violations." Defendant's Ex. G. See Dkt. #106.

**RESPONSE:** Uncontested.

12. Defendant Roman and Maroney recklessly disregarded Cook County policy and did not substantively review Arquero's history prior to seizing him. Plaintiff's Ex. I (Maroney Dep.) & Ex. J.

**RESPONSE: Objection. Whether the defendants "recklessly disregarded" Cook County policy is a legal conclusion and not a statement of fact.**

13. During his deposition under oath, Arquero testified that he became aware of an issue with his equipment when he was sitting in his living room right next to his EM box and the unit started ringing. Defendant's Ex. H (Arquero Dep.) 48: 6-17.

**RESPONSE:** Uncontested.

14. Arquero stated in a sworn affidavit under oath that his reincarceration was due to false allegations that he had violated EM conditions and was away from the monitor, when in fact he was right next to the equipment. Plaintiff's Ex. F (Arquero Aff.) ¶ 3-4.

**RESPONSE: Admit that Arquero stated in a sworn affidavit under oath that his reincarceration was due to false allegations that he had violated EM conditions and was away from the monitor. Deny that he was right next to his equipment. See Paul Drews Dep (Def. Ex. I, 31:19-24, 32:1-7, 34:1-3, 39:9-11); and John Webb Dep (Plaintiff Ex. B 43:15-24, 44:1-7, 60:19-24; 61:1, 18-22)**

### Initial Criminal Court Hearing

4

15. On February 8, 2019, when Plaintiff was reincarcerated in criminal court, Judge Erica Reddick raised doubt as to the legality of his incarceration and expressed a desire to resolve the matter quickly. Defendant's Ex. D. 6: ¶ 5-21.

**RESPONSE: Deny. (Plaintiff Ex. D; 6:23-24; 7:1-5, 9-10)**

16. After realizing the urgency of the situation and discovering the fact that Arquero had a wife and three kids at home, the court expressed concern about the alleged violations: "I understand but if it's, you know, not his – because of anything that he's – actually done, it's not fair for him to..." Defendant's Ex. D. 6: 5-2.

**RESPONSE:** Uncontested.

17. At the conclusion of that hearing, the court ordered State's Attorney Kevin Nolan to investigate as to why the EM device was triggering violations and to expedite getting all the necessary information to the court. Defendant's Ex. D. 7: 1-16.

**RESPONSE:** Uncontested.

18. Kevin Nolan, subsequent to his investigation on February 8th, 2019, conferred with Sergeant Jim Passas of the EMU via email communications, ultimately concluding that this case should have been reviewed prior to seizing Arquero and taking him away from his family. Plaintiff's Ex. G.

**RESPONSE:** Uncontested.

19. On February 8, 2019, Sergeant Jim Passas sent an email to State's Attorney Kevin Nolan that confirmed an audit was conducted on excessive violators and concluded Arquero's case should have been reviewed prior to reincarceration. Plaintiff's Ex. G. (emphasis added).

**RESPONSE:** Uncontested.

**Second Criminal Court Hearing & Subsequent Investigation**

20.     During the February 11, 2019, hearing, State's Attorney Kevin Nolan stated to the court that there was a determination made that there clearly was an equipment issue and that there have been no violations since the equipment was swapped out. Defendant's Ex. E. 3: 8-24, 4: 1-7.

**RESPONSE:** Uncontested.

21.     Judge Reddick then specified: "My concern is: how do we prevent this going forward? What prevents them – from someone else coming through and auditing and making this determination and him becoming reincarcerated? That's of concern to the court based on the disruption to his life and that of his family members." Defendant's Ex. E. 4: 20-24.

**RESPONSE:** Uncontested.

22.     Further, Judge Reddick suggested specific language be drafted in the court order to prevent this from happening to Arquero in the future, stating that "it certainly should include that over the history of his time on electronic home monitoring that there have been noted several equipment failures which resulted in him having to switch out his equipment and that these are due in part to the location of his apartment together with the equipment issues and that since October of 2018 there have been no noted violations, although there was, after an audit, a wrongful reincarceration." Defendant's Ex. E. 7: 1-12. (emphasis added).

**RESPONSE:** Uncontested.,

23.     An order was then drafted which explicitly stated: "Previous violations were based on equipment failure. There have been no documented violations since replacement of equipment on 10/15/2018 and the Defendant shall not be reincarcerated based on any equipment failures." Defendant's Ex. F.

**RESPONSE:** Uncontested.

24. Cook County State's Attorney Kevin Nolan refrained from proffering the Passas email which showed that Arquero's seizure was not supported by probable cause. Plaintiff's Ex. G; Defendant's Ex. E.

**RESPONSE: Deny. (Def. Ex. E; 2:19-24, 3:1-2, 14-20)**

### Post-Release & Investigation

25. On March 28, 2019, Defendant Shavers was punished by Defendant Webb (Director of EM) for violating Cook County policy and he received a four-day disciplinary suspension in connection with Arquero's wrongful reincarceration. Plaintiff's Ex. D.

**RESPONSE:** Uncontested.

26. In a memo attached to the suspension, Defendant Webb stated that Defendant Shavers, on all three reports, affixed his signature to the documents, and failed to properly research the program alerts to determine if the alerts necessitated the arrest and re-incarceration of EM participant Arquero. Plaintiff's Ex. D.

**RESPONSE:** Uncontested.

27. Defendant Hill was the sole person who ordered the seizure of Arquero and was not disciplined because he was a union employee. Plaintiff's Ex. B (Webb Dep.) 97: 12-16.; Plaintiff's Ex. B. 69: 3-16; 94: 13-24.

**RESPONSE: Deny. (Plaintiff Ex. C; Hill Dep 55:4-19)**

28. On October 9, 2020, affiant Michael Klee signed a sworn statement that Cook County reincarcerated him at 3:00 a.m. based on equipment violations even though he had proof where he was – ultimately experiencing the same thing as Arquero. See Plaintiff's Ex. K (Klee Aff.).

**RESPONSE: Objection. The defendant has requested in its Reply Brief that Klee's affidavit be stricken.**

7

29. On November 12, 2020, affiant Evette Vine also signed a sworn statement that she was picked up by Cook County investigators based on an EM violation, although though she was physically present at home, and she had to ride around in a sheriff's vehicle while they picked up other individuals for faulty violations. See Plaintiff's Ex. H. (Vine Aff.).

**RESPONSE: Objection. The defendant has requested in its Reply Brief that Vine's affidavit be stricken.**

30. Although Arquero initialed and signed a statement accepting the rules and regulations of Electronic Monitoring, he did not agree or consent to being wrongfully incarcerated without probable cause. Defendant's Ex. B2, at 2.

**RESPONSE:** Uncontested.

31. Not a single named defendant did a substantive review required by Cook County Re- incarceration Procedure (1205.5). Plaintiff's Ex. L: Defendant's Bate Stamp CCSAO Arquero 000865; § 1204.5(a)(1).; Ex. A (Shavers Dep.); Ex. G (Passas Email); Ex. I (Maroney Dep); Ex. J (Roman Dep).

**RESPONSE: Deny. (Plaintiff Ex. I; Moroney Dep 47:5-6)**

### Depositions

32. Plaintiff Michael Arquero testified under oath in his deposition that he was always fully compliant: "there was times I'd be sitting next to the box and they would call me on the box - I would pick up the phone that came with the box and they would say I was out of range." Defendant's Ex. H (Arquero Dep.) 35: 21-24.

**RESPONSE:** Uncontested.

33. Arquero further testified under oath that: "there was never a time I left my home without a court order." Defendant's Ex. H (Arquero Dep.) 39: 4-5.

**RESPONSE:** Uncontested.

34. Arquero was *never* out of range without approval from a judge or a court order. Defendant's Ex. H (Arquero Dep.) 74: 15-21 (emphasis added). **("Q: Now, it's your testimony then, Michael, for the entire time that you were on EM that you were never out of range or not at your residence when you should have been such that an alert would be sent to the call center?; A: I was never out of range without permission from a judge.").**

**RESPONSE: Admit plaintiff testified to the above but See Paul Drews Dep (Def. Ex. I; 31:19-24, 32: 1-7, 36:3-7, 39:9-11); and John Webb Dep (Plaintiff Ex. B 43:15-24, 44:1-7).**

35. Defendant Shavers testified in his deposition that he should have questioned his lieutenants and researched why they wanted to reincarcerate Arquero. Plaintiff's Ex. A (Shavers Dep.) 73: 9-20.

**RESPONSE: Uncontested**

36. Defendant Officer Maroney lacked probable cause to seize Arquero, and he testified under oath that he questioned the legitimacy of Arquero's history of violations to Defendant Sergeant Hill. Plaintiff's Ex. I (Maroney Dep.) 47: 14-24.

**RESPONSE: Objection. "Probable cause" is a legal conclusion. Subject to and without waiving said objection, Deny. (Plaintiff Ex. I; Moroney Dep 47: 5-6)**

37. Defendant Officer Roman testified under oath in his deposition that he did not review Arquero's data record prior to reincarcerating Plaintiff. Plaintiff's Ex. J (Roman Dep.) 41: 9-13.

**RESPONSE:** Uncontested.

38. Defendant Hill recklessly disregarded Cook County policy in not reviewing Arquero's paperwork prior to enacting Arquero's seizure, which obviously showed there was no probable cause, thereby enabling Plaintiff's seizure without probable cause. Plaintiff's Ex. B. 69:

9

3-16; 94: 13-24; Plaintiff's Ex. L: Defendant's Bate Stamp CCSAO Arquero 000865; § 1204.5(a)(1). Defendant's Bate Stamp CCSAO Arquero 000865; § 1204.5(a)(1).

**RESPONSE: Objection. Whether Defendant, Hill "recklessly disregarded" Cook County policy is a legal conclusion and not a statement of fact.**

39. Defendant Shavers also recklessly disregarded Cook County policy in not reviewing Arquero's paperwork prior to enacting Arquero's seizure, which obviously showed there was no probable cause, thereby enabling Plaintiff's seizure without probable cause. Plaintiff's Ex. A (Shavers Dep.) 53: 1-20; Plaintiff's Ex. L. Defendant's Bate Stamp CCSAO Arquero 000865; § 1204.5(a)(1).

**RESPONSE: Objection. Whether Defendant, Shavers "recklessly disregarded" Cook County policy is a legal conclusion and not a statement of fact.**

40. Defendant investigators Roman and Maroney seized Arquero without probable cause because they didn't substantively review his record of violations (which clearly show they lacked basis in probable cause), and they were personally aware that Arquero was home. Defendant's Ex. G. See Dkt. #106; Plaintiff's Ex. I (Maroney Dep.); Plaintiff's Ex. L. Defendant's Bate Stamp CCSAO Arquero 000865; § 1204.5(a)(1).

**RESPONSE: Objection. "Probable cause" is a legal conclusion. Subject to and without waiving said objection, Deny. (Plaintiff Ex. I; Moroney Dep 47:5-6)**

Dated: January 23, 2023

Respectfully Submitted,

**Cook County Sheriff Thomas Dart, Sgt. John Webb, Sgt. Hill, Sgt. Trois Shavers, Officer Maroney, Officer Roman, and Cook County, a Body Politic and Corporate**

By: */s/ Jason E. DeVore*
Jason E. DeVore, One of the Attorneys for Defendants

10

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
tradunsky@devoreradunsky.com